Gina ANDREWS

v.

FIFTH THIRD BANK.

Court of Appeals of Tennessee, at Nashville.

Feb. 7, 2007 Session.

April 5, 2007.

August C. Winter, Brentwood, Tennessee, for the appellant, Gina Andrews.

J. Timothy Street, Franklin, Tennessee, for the appellee, Fifth Third Bank.

## OPINION

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Ex-wife of debtor, who had a recorded final judgment against debtor's real property, filed action against Bank, who obtained two recorded default judgments against debtor, in order to determine which party was entitled to the excess proceeds resulting from the foreclosure sale of debtor's real property. The trial court determined that (1) Ex-wife's failure to execute on her judgment denied her the right to claim priority pursuant to Tennessee Rule of Civil Procedure 69.07(3); and (2) Ex-wife could not collaterally attack the validity of Bank's judgments. We reverse and remand.

This case consolidates three cases, all of which resulted in encumbrances being placed on the real property of Mr. Michael Covey. Initially, it is important to note that on April 7, 2000, Mr. Covey and Ms. Gina Andrews, the Appellant, were divorced and the trial court ordered Mr. Covey to make child support payments to Ms. Andrews as well as installment pay-

ments for Ms. Andrew's share of the family business, Uni–Body Collision Center, Inc. On March 4, 2003, the trial court entered a final order evidencing an arrearage owed to Ms. Andrews for installments on the family business which totaled $55,290.80. The order specifically stated,

That Mr. Covey's last payment to Ms. Andrews for her interest in Unibody Collision Center occurred in July of 2002. That the balance owed to Ms. Andrew's for her interest in said business is in the amount of $55,290.80 ... That to secure Mr. Covey's payment to her, Ms. Andrew's is granted a lien against Mr. Covey's real property located on Ash Hill Road ...

...

It is further, ORDERED, ADJUDGED AND DECREED if Mr. Covey breaches his obligation to make his property division payments as referenced in paragraph 2 above or if he fails to pay Ms. Andrews the full amount due for her property interest, less the 15% agreed upon by the parties, within one year of the date of this Order, Ms. Andrew's may petition the Court for an attachment sale of said property and upon the sale of said property all amounts due and owing under the terms [of] this Order shall immediately become due and payable and Mr. Covey shall not be entitled to a 15% reduction of the balance due Ms. Andrew's for payment of her property interest in Unibody Collision Center.

A certified copy of the March 4, 2003, order was recorded on May 7, 2003.

Prior to any of the events in issue in this case, on September 29, 1999, Mr. Covey had conveyed his Ash Hill Road property by deed of trust to Danny J. Herron, Trustee, to secure an indebtedness to The Community Bank (TCB). Mr. Covey defaulted on the promissory note, and after proper advertising, a foreclosure sale was held on October 20, 2003, in which Mr. Covey's Ash Hill Road property was sold, resulting in excess proceeds in the amount of $34,231.00.

On June 21, 2001, (Chancery Court case No. 28025) Mr. Keith Taylor sued Mr. Covey and his two partners for back rent and damage to the business property which Mr. Taylor had rented to the defendants. Mr. Taylor obtained a default judgment against Mr. Covey on February 22, 2002. However, Mr. Taylor did not obtain a judgment against Mr. Covey's two partners. The default judgment against Mr. Covey was recorded on March 11, 2003, and assigned to Franklin National Bank ("FNB") on June 26, 2003. On December 9, 2003, Mr. Taylor voluntarily dismissed his claims against Mr. Covey's partners.

Another action was filed against Mr. Covey (Chancery Court case no. 29487) as well as Uni–Body Collision Center, Inc. on March 7, 2003, by FNB for default on a promissory note. Team One Auto Body and Glass was also named as a defendant under the theory that the company was in possession of property which Mr. Covey had pledged as security for the promissory note. The Complaint requested a prejudgment attachment on Mr. Covey's real property. On May 15, 2003, the trial court entered a default judgment against Mr. Covey and Uni–Body Collision Center, in the amount of $53,791.53, which FNB recorded on May 23, 2003. However, the default judgment did not dispose of FNB's claim against Team One Auto Body and Glass.

FNB apparently anticipated that excess proceeds from the foreclosure sale would exist and five days before the foreclosure sale, in case No. 29487 issued garnishments to be served upon The Community Bank in order to recover those excess

proceeds, in an effort to recoup the amount of FNB's default judgments. On October 20, 2003, FNB filed conditional judgments against The Community Bank. At this point the chronology of events becomes somewhat confused. A hearing was held on November 4, 2003, before Honorable R.E. Lee Davies, Chancellor in case No. 29487, which resulted in the order entered November 20, 2003, wherein the clerk and master was ordered to pay the excess funds to FNB. It was the day before this hearing of November 4, 2003, when the action at bar was filed by Ms. Andrews against The Community Bank, Glenn B. Rose, successor trustee, and FNB. All of these proceedings continued parallel to each other until a hearing of November 15, 2004, before the Honorable Timothy Easter, Judge, resulted in the December 3, 2004, order consolidating case Nos. 28025 and 29487 with the case at bar, that being case No. 30105 and then, pursuant to Tennessee Rule of Civil Procedure 53, the appointment a special master and reference of the combined cases to the special master for findings of fact and conclusions of law.

On April 7, 2005, the master concluded that Ms. Andrews was entitled to the garnished funds because (1) FNB's interlocutory default judgments were insufficient to create valid judgment liens since they were not final judgments; (2) FNB's prejudgment attachment in the action against Uni–Body Collision Center was ineffective against third parties.

On June 15, 2005, the trial court rejected the Master's report and set the case for trial. On February 7, 2006, the trial court entered a memorandum opinion finding that (1) Ms. Andrews' failure to issue execution on her judgment lien denied her the right to claim priority pursuant to Tennessee Rule of Civil Procedure 69.07(3); and (2) Ms. Andrews could not collaterally attack the validity of FNB's judgments and thus, FNB was entitled to the excess proceeds resulting from the foreclosure sale. Ms. Andrews appeals.

██ The sole question Ms. Andrews presents for review is whether the trial court properly found that FNB was entitled to the excess proceeds from the sale of Mr. Covey's Ash Hill Road property. A determination of the priority of rights among lien holders is solely a question of law when the parties do not dispute the facts. *Bankers Trust Co. v. Collins,* 124 S.W.3d 576, 578 (Tenn.Ct.App.2003). When addressing a question of law, this Court reviews the trial court's decision *de novo* upon the record with no presumption of correctness. *ATS, Inc. v. Kent,* 27 S.W.3d 923, 924 (Tenn.Ct.App.1998).

██ "The priority of any lien depends on the 'time it attached to the property in question and became choate.'" *Adamsville Lumber Co., Inc. v. Rainey,* 348 F.Supp. 373, 376–77 (W.D.Tenn.1972) (quoting *United States v. City of New Britain,* 347 U.S. 81, 86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954)).

██ The "first in time, first in right" rule is of ancient origin, and in the absence of legislation to the contrary is apparently universal.

We believe that priority of these statutory liens is determined by another principle of law, namely, "the first in time is the first in right." As stated by Chief Justice Marshall in *Rankin v. Scott* (US) *supra:*

The principle is believed to be universal, "that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or

equity to a subsequent claimant." 25 U.S. 177, 12 Wheat., at 179, 6 L.Ed. 592.

This principle is widely accepted and applied, in the absence of legislation to the contrary. 33 AmJur, Liens * § 33; 53 CJS, Liens § 10b. We think that Congress had this cardinal rule in mind when it enacted § 3670, a schedule of priority not being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate.

*United States v. City of New Britain, Conn.*, 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 (U.S.1954).

▇▇▇ A lien becomes choate or perfected "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *U.S. v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 89, 83 S.Ct. 1651, 10 L.Ed.2d 770 (U.S.1963). In order for a lien to be perfected, the statutory requirements must also be met. 53 C.J.S. *Liens* § 44 (2005). Tennessee Code Annotated section 25–5–101(b)(1) states that:

> Except as provided in subdivision (b)(2), judgments and decrees obtained from and after July 1, 1967, in any court of record and judgments in excess of five hundred dollars ($500) obtained from and after July 1, 1969, in any court of general sessions of this state shall be liens upon the debtor's land from the time a certified copy of the judgment or decree shall be registered in the lien book in the register's office of the county where the land is located . . .

Therefore, pursuant to Tennessee Code Annotated section 25–5–101(b)(1), a lien on a debtor's real property is perfected by recording the judgment in the register's office of the county where the property is located. *In re Northern*, 294 B.R. 821, 825 (Bankr.E.D.Tenn.2003). As a result, Ms.

Andrews clearly perfected her judgment lien on May 7, 2003, when she filed the judgment in the county register's office where Mr. Covey's Ash Hill Road property was located.

▇▇▇ Having established that Ms. Andrews created an effective judgment lien, we turn to the issue of priority. Ms. Andrews asserts that although FNB filed its judgments against Mr. Covey on March 11, 2003, and May 23, 2003, her judgment lien which was perfected on May 7, 2003, had priority over FNB's judgments because FNB's judgment liens were ineffective. In order to create an effective judgment lien, there must be a judgment and it is essential that the judgment be final, valid and subsisting. 50 C.J.S. *Judgments* § 555 (1997). According to Ms. Andrews, FNB's judgment liens were ineffective because the default judgments entered against Mr. Covey were not final orders. However, FNB argues and the trial court agreed that Ms. Andrews did not have standing to collaterally attack the validity of FNB's judgments, therefore the issue of the effectiveness of FNB's judgment liens was moot.

▇▇▇ "A collateral attack is an attempt to avoid, defeat, or evade a judgment, or to deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." 50 C.J.S. *Judgments* § 505 (1997). It is well settled that a judgment or order cannot be collaterally attacked unless it affirmatively appears, on the face of the record, "(1) that the Court had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party, or his

privies." *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn.1996). However, "[w]here no relief is sought against a judgment, as, for instance, where the proceeding is for the purpose of construing the judgment, or determining its scope and effect or its nature, there is no infraction of the rule against collateral attack." 50 C.J.S. *Judgments* § 505 (1997).

■ In this action, Ms. Andrews is not attempting to avoid, defeat, or evade FNB's default judgments against Mr. Covey, nor is she trying to deny the force and effect of FNB's judgments. Rather, Ms. Andrews asks the Court to determine the validity of FNB's actions taken subsequent to the entry of the default judgments in order to decide whether the recording of the judgments created effective judgment liens. Since the inquiry as to whether a judgment is final for purposes of perfecting a judgment lien is not a collateral attack on the judgment itself, we find that the trial court erred by failing to determine the validity of FNB's judgment liens. Since such a determination is essential to the outcome of this matter, we now undertake the issue.

■ Whether an order is an order of final disposition is governed by Tennessee Rule of Civil Procedure 54.02, which states:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon a express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

Thus, a judgment is final if: (1) the court expressly designated it as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02; or (2) the order adjudicated all claims in the action. *In re Estate of Henderson*, 121 S.W.3d 643, 646 (Tenn. 2003).

■ In this case, FNB's default judgment against Mr. Covey for back rent and damage to Mr. Taylor's business property did not dispose of the claims against Mr. Covey's partners. Although FNB recorded its default judgment on March 11, 2003, the claims against Mr. Covey's partners were not dismissed until December 9, 2003. Therefore, because the trial court did not expressly direct the entry of a final order and because the claims against Mr. Covey's partners remained unresolved after the entry of the default judgment, FNB's default judgment was not final and could not be perfected until December 9, 2003. Likewise, FNB's default judgment against Uni–Body Collision Center did not dispose of the claims against Team One Auto Body and Glass and thus the recording of the judgment on May 23, 2003, was ineffective to perfect its judgment lien. It would therefore appear that Ms. Andrews' right to the excess proceeds from the foreclosure sale was superior to that of FNB.

The lien of a judgment is purely statutory and depends on compliance by the judgment creditor with the provisions of Tennessee Code Annotated section 25–5–105. *Fidelity & Deposit Co. of Md. v. Fulcher*

*Brick Co.,* 161 Tenn. 298, 30 S.W.2d 253, 254 (Tenn.1930). It is not disputed that Ms. Andrews' lien of judgment became effective on May 7, 2003, upon her recording her final judgment. FNB recorded its default judgment against Mr. Covey in the Uni–Body case on May 23, 2003. Even if the Uni–Body judgment were final, it would be secondary to Ms. Andrews' judgment lien. The Taylor default judgment against Mr. Covey, however, was recorded on March 11, 2003, and, if indeed that judgment was effective to create a lien in favor of Mr. Taylor's assignee, FNB, it would take precedence over Ms. Andrews' judgment lien since it was "first in time." Thus, the decisive question as to priority is whether or not the FNB default judgment against Mr. Covey, recorded on March 11, 2003, is effective at any time prior to Ms. Andrews' judgment recorded on May 7, 2003. The answer to this question is entirely dependent on whether Tennessee Code Annotated, Chapter 5 entitled "Lien of Judgment" applies only to what we know as final judgments or also encompasses judgments which are less than final in character. When the history of this "Lien of Judgment" statute is considered, it cannot be doubted that the judgment contemplated therein is a final judgment. The statutory scheme was born in Chapter 90 of the Public Acts of 1831, which provided that "all judgments obtained in any court of record in this State shall be a lien upon the debtor's land from the time said judgment was rendered." 1831 Tenn.Pub. Acts § 7 page no. 111. The lien provided therein continued for a period of 12 months after its rendition, and, as to land located in the county where the judgment was entered, no recordation thereof was required. 1831 Tenn.Pub.Acts § 7 page no. 111. The 12–month period was extended if the judgment was appealed to one year after a favorable determination of the appeal. 1831 Tenn.Pub.Acts § 7 page no.

111. In order to perfect a lien of judgment rendered in any county other than the county of the debtor's residence, "the lien of said judgment shall take effect only from the time when a certified copy of said judgment shall be registered in the county where the debtor resides." 1831 Tenn. Pub.Acts § 8 page no. 111. This section of the statute provided the same extension of the time if the case were appealed.

This statutory scheme has remained relatively stable through the ensuing 175 years, except for the requirements of Chapter 375 of the Public Acts of 1967 that a certified copy of the judgment be recorded in the county where the land lies; Chapter 673 of the Public Acts of 1986 extending the time of the lien of judgment from one year to three years and Chapter 725 of the Public Acts of 2000 extending such period to 10 years as now reflected in Tennessee Code Annotated section 25–5–105.

■ While the provisions of Tennessee Code Annotated section 25–5–101, *et seq.* use only the word "judgment" and never the words "final judgment," under any analysis associated with logic, the only "judgment" ever contemplated by the statutory scheme is a "final judgment." This is evidenced by Tennessee Code Annotated section 25–5–106, providing that "[i]f an appeal is taken from any judgment for which the lien provided by this chapter would apply, the time for sale provided in 25–5–105 shall commence upon the final determination of such."

The requirement as to the finality of a trial court decision as a necessary predicate for appeal did not originate with the advent of the Tennessee Rules of Civil Procedure or the Tennessee Rules of Appellate Procedure. It was born in remote antiquity as evidenced in *Joslyn v. Sappington,* 1 Tenn. 222, 1 Overt. 222 (1806),

wherein Defendant moved to dismiss an appeal from the county court of Davidson County. There had been a plea in abatement filed in the county court, to which there was a demurrer. The trial court overruled the demurrer with such judgment being *respondeat ouster* requiring the demurrant to further plead. Instead, the demurrant appealed, and the Supreme Court held:

> Per curiam. An appeal will not lie agreeably to our law, in ordinary cases, unless from a final judgment. Had the plea been sustained there might have been an appeal, for then the plaintiff would have been out of court, but, as the case stood, the defendant should have answered over, and, upon the case coming here after final judgment, we would then look into the interlocutory proceedings. If an appeal was allowed upon intermediate proceedings we might have several in the same cause. If the cause were to be taken up here, and the plea in abatement not supported, we should have to send the cause back to the County Court for trial, and upon the final judgment it might come here again.

> The appeal must be dismissed.

*Joslyn,* 1 Tenn. at 222–23.

It has long been held that appeal from an interlocutory judgment is premature and will be dismissed. *Carney v. Murphy,* 61 Tenn. 340 (Tenn.1872).

Strikingly parallel to the case at bar and very persuasive to the Court is *City of Salina v. Star B, Inc.,* 11 Kan.App.2d 639, 731 P.2d 1290 (Kan.Ct.App.1987), *aff'd as modified on other grounds,* 241 Kan. 692, 739 P.2d 933 (Kan.1987). The Kansas judgment lien statute (Kan.Stat.Ann. § 60–2202), like the Tennessee statute (Tenn.Code Ann. § 25–5–101, *et seq.*), referred only to "judgment" and not to "final judgment."

**60–2202. Judgment liens.** (a) Any judgment rendered in this state by a court of the United States or by a district court of this state in an action commenced under chapter 60 of the Kansas Statutes Annotated shall be a lien on the real estate of the judgment debtor within the county in which judgment is rendered. Except as provided in subsection (c), the lien shall be effective from the time at which the petition stating the claim against the judgment debtor was filed but not to exceed four months prior to the entry of the judgment. An attested copy of the journal entry of the judgment, together with a statement of the costs taxed against the judgment debtor in the case, may be filed in the office of the clerk of the district court of any other county upon payment of the fee prescribed by K.S.A. 28–170 and amendments thereto, and the judgment shall become a lien on the real estate of the debtor within that county from the date of filing the copy. The clerk shall enter the judgment on the appearance docket and index it in the same manner as if rendered in the court in which the clerk serves. Executions shall be issued only from the court in which the judgment is rendered.

(b) Any judgment rendered by a district court of this state in an action commenced under chapter 61 of the Kansas Statutes Annotated shall become a lien on the real property of the judgment debtor when the party in whose favor the judgment was rendered pays the fee prescribed by K.S.A. 28–170 and amendments thereto and the clerk of the district court enters the judgment in the appearance docket. The lien shall become a lien only upon the debtor's real property that is located in the county in which the filing is made, but a filing may be made in any county in which real property of the judgment debtor is lo-

cated. Upon the filing of a journal entry of judgment and payment of the fee as provided in this section, the clerk of the district court shall enter it in the appearance docket. The lien shall cease to be a lien on the real property of the judgment debtor at the time provided in article 24 of this chapter.

Kan.Stat.Ann. § 60–2202(a)(b).

In the *City of Salina* case, the determinative question was priority among lien holders. First National Bank claimed a security interest recorded with Salina County Register of Deeds on May 8, 1985, based upon an assignment to it by Patton and Ogborn dated August 3, 1984. First Agency of Leoti, Inc. filed suit against the judgment debtor on March 8, 1984, and on November 8, 1984, the trial court granted partial summary judgment to First Agency, reserving certain issues for future trial. On November 30, 1984, the trial court entered its order for partial summary judgment in favor of First Agency. While the Kansas statute does not contemplate recording of the judgment as a prerequisite to the lien, as does the Tennessee statute, the determinative question is whether the November 30, 1984, partial summary judgment is effective to perfect the lien under the Kansas statute. In addressing the issue, the court said:

On March 7, 1986, First Agency and First National Bank filed a Joint Motion for Determination of Entitlement to Proceeds, as provided in K.S.A. 26–517. First Agency argued that the November 30, 1984, partial summary judgment was a final judgment because the court had certified it under 60–254(b) and that pursuant to K.S.A. 1984 Supp. 60–2202(a) its judgment lien on the real property of R & D Investments related back four months, to July 30, 1984. First National Bank contended that the partial summary judgment was not a final judgment because the court failed to make an express direction for entry of judgment and express determination that there was no just reason for delay as required by 60–254(b). It argued that judgment for First Agency in the foreclosure action did not become final until February 19, 1985, when the court reformed the mortgage and, thus, that First Agency's judgment lien on R & D Investment's real property did not become effective on July 30, 1984, but on November 19, 1984, well after the bank obtained the August 3, 1984, security interest in the Great Plains Building.

*City of Salina*, 731 P.2d at 1292–93. *See also, Redding & Co. v. Russwine Constr. Corp.*, 417 F.2d 721, 727 (D.C.Cir.1969).

So it is under Kansas law that First National had a lien upon the property from and after August 3, 1984, when it received its assignment from Patton and Ogborn. If the partial summary judgment in favor of First Agency, which was entered November 30, 1984, was effective to perfect the lien under Kan.Stat.Ann. § 60–2202, it would have related back by the terms of the statute to a period prior to August 3, 1984. If, however, the November 30, 1984, judgment was not effective under Kan.Stat.Ann. § 60–2202, but First Agency's judgment only became effective on February 19, 1985, when the trial court determined finally the remaining issues reserved for trial, the relation back provisions of the statute would run only from February 19, 1985, and would establish First Agency's lien at a date subsequent to August 3, 1984.

The Court of Appeals of Kansas applied the Kansas counterpart to Tennessee Rule of Civil Procedure 54.02, holding that the failure of the November 30, 1984, partial summary judgment order to state that it was final and there was no just cause for delay, rendered the November 30, 1984,

partial summary judgment ineffective to perfect the lien.

Because the court failed to make an express determination that there was no just reason for delay, the November 30, 1984, partial summary judgment for First Agency in the foreclosure action did not become final until February 19, 1985, when the trial court reformed the mortgage and adjudicated the remainder of the action. Pursuant to 60–2202(a), First Agency's judgment lien on the Great Plains Building attached on November 19, 1984, several months after First National Bank acquired its security interest in the building. The trial court erred by holding that First Agency had priority over First National Bank to the proceeds of the condemnation of the building.

*City of Salina,* 731 P.2d at 1296.

Our holding that Tennessee Code Annotated section 25–5–101 *et seq.* in use of the word "judgment" in fact means only a "final judgment" is further buttressed by the provisions of Tennessee Rule of Civil Procedure 69.07(2) effective July 1, 2004, specifically stating that a judgment lien created by registration is in fact a "final judgment."

FNB argues and the trial court agreed that Ms. Andrews' failure to issue execution on her judgment lien "denie[d] her a place in the line which would render her judgment superior to [FNB]." In drawing this conclusion, the trial court relied on Tennessee Rule of Civil Procedure 69.07(3), which states in pertinent part:

(3) Levy.—As long as a judgment lien is effective, no levy is necessary; the judgment creditor may move for an order of sale. Otherwise a levy occurs when the sheriff exercises control over the judgment debtor's realty. The first judgment creditor to deliver writ of execution to the sheriff, as shown by record in

the clerk's office, has priority over other judgment creditors as to the realty levied upon.

We believe that the trial court misconstrued Rule 69.07(3) and thus erred in applying the levy portions of the rule to this matter. Although Tennessee Rule of Civil Procedure 69.07(3) addresses the competing rights of judgment creditors, it is inapplicable to instances where there is an effective judgment lien. The rule expressly states that, "[a]s long as a judgment lien is effective, *no levy is necessary ... Otherwise ...* " Because it is undisputed that Ms. Andrews had an effective judgment lien after recording her judgment on May 7, 2003, Rule 69.07(3) by its very terms renders levy unnecessary and the last two sentences of the rule are never triggered.

■ It has long been the law in Tennessee that the priority of a lien on real property depends on the time in which the lien attached to the property by way of registering the judgment. *Schoolfield v. Cogdell,* 120 Tenn. 618, 113 S.W. 375, 378 (Tenn.1908); *Adamsville Lumber Co. Inc.,* 348 F.Supp. at 376–77. Furthermore, the Advisory Commission Comments to Rule 69 specifically states that "New Rule 69 does not radically change current law." It is therefore clear that the Rule was not intended to abolish the traditional "first in time, first in right" common law rule.

Furthermore, Tennessee Rule of Civil Procedure 69.07(2) states that:

A judgment lien against the judgment debtor's realty is created by registering a certified copy of the judgment in the register's office of the county where the realty is located. Once the judgment lien is created by registration, it will last for the time remaining in a ten-year period from the date of final judgment entry in the court clerk's office ...

Thus, a judgment lien survives for ten years from the date of entry of final judgment and once the lien attaches, it may only be lost through a failure to exercise the right within the time provided by the statute. Tenn.R.Civ.P. 69.07(2); *ATS, Inc.*, 27 S.W.3d at 926. We therefore find that because Ms. Andrews perfected her judgment lien prior to FNB, and the ten-year period has not lapsed, Ms. Andrews' rights as a lien holder were junior only to TCB. Her lien attached to the excess proceeds from the foreclosure sale and entitled her to payment in full before any payments were made to creditors of lesser priority. *Third Nat'l Bank v. McCord,* 688 S.W.2d 446 (Tenn.Ct.App.1985); *see also Bailey Mortgage Co. v. Gobble–Fite Lumber Co.,* 565 So.2d 138 (Ala.1990). Appellant seeks prejudgment interest. It appears to this Court that the amount of excess proceeds from the October 20, 2003, foreclosure is undisputed in the amount of $34,231. It would appear from the record that, at least, from January 5, 2004, when FNB first received the excess proceeds from the clerk and master, Appellant is entitled to prejudgment interest. In the first instance, however, such an award and the percentage thereof addresses itself to the discretion of the trial judge. *Inter. Flight Center v. City of Murfreesboro,* 45 S.W.3d 565, 573 (Tenn.Ct.App.2000). This matter may be addressed by the trial court on remand.

The judgment of the trial court is reversed and the case is remanded to the trial court for any further proceedings consistent herewith. The costs of appeal are assessed against Appellee, Fifth Third Bank.