IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2013 Session

# MARLIN FINANCIAL & LEASING CORP. v. LUCIUS E. BURCH, III

**Appeal from the Chancery Court for Hamilton County**
**No. 10-0208      Jeffrey M. Atherton, Chancellor**

**No. E2013-00178-COA-R3-CV-FILED-NOVEMBER 18, 2013**

This appeal arises from a dispute over the enforcement of guaranty agreements in light of a bankruptcy. Marlin Financial & Leasing Corp. ("Marlin") sued Lucius E. Burch, III ("Burch") in the Chancery Court for Hamilton County ("the Trial Court") alleging breach of contract, conversion, and, unjust enrichment. Marlin asserted that Burch owed money under certain guaranty agreements he had signed for leases entered into by Marlin. After a trial, the Trial Court dismissed the case for lack of jurisdiction. Marlin appeals to this Court. We hold that, given the Bankruptcy Court's orders deeming all claims related to the leases at issue satisfied, the Trial Court lacked subject matter jurisdiction. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

F. Scott LeRoy, Chattanooga, Tennessee, for the appellant, Marlin Financial & Leasing Corp.

William N. Helou and R. Mark Donnell, Nashville, Tennessee, for the appellee, Lucius E. Burch, III.

# OPINION

## Background

As noted by Marlin on appeal, the relevant facts of this case largely are contained in documents entered into the record without objection by the parties.[1] Marlin is a Chattanooga-based commercial equipment leasing company that has been in business for more than thirty years. Marlin serves as a "leasing arm" for upwards of fifty banks, primarily in Tennessee, Kentucky, Georgia, and Alabama.

In September 2006, Santa Fe Cattle Company ("Santa Fe") entered into a series of commercial leases with Marlin, mainly for restaurant equipment. Between September 2006 and May 2009, Marlin and Santa Fe entered into 23 distinct leasing agreements. In connection with each lease agreement, a separate guaranty agreement was signed by Burch in which he guaranteed Santa Fe's obligations under the leases. Marlin then assigned the leases to various banks. Marlin's role, therefore, was that of a broker and servicer of the leases.[2] The banks acquired the right to payment. Marlin's "take" was the difference between the interest charged under the leases and that interest which the banks charged Marlin. Marlin received its fee up-front. Marlin also had a residual payment of $1 for each lease under a purchase option.

In 2009, the arrangement ran into financial difficulties. Santa Fe and its related entities filed for bankruptcy in the U.S. Bankruptcy Court for the Middle District of Tennessee. The Santa Fe debtors received approval from the Bankruptcy Court to sell a number of entities and assign the leases to DBMC Investments, LLC. The sale and assignment proceeded. As relevant to the issues on appeal, the DBMC sale order contains the following language:

> The Debtors have cured, or have provided adequate assurance of cure of, any defaults existing prior to the Closing Date, which is the effective date of the assumption of the Assumed Leases and Contracts, and have provided compensation or adequate assurance of compensation to any non-Debtor party to such contracts for any of their actual pecuniary losses resulting from any default arising prior to the Closing Date under the Amended Leases and

---

[1]The record contains a Statement of Evidence summarizing the trial testimony in this case, and from which both sides draw for their briefs.

[2]According to Marlin, the rights retained under the assignment were the rights to full payouts.

Contracts, within the meaning of section 363(b)(1)(B) of the Bankruptcy Code (collectively, the "Cure Amounts").

The DBMC sale order goes on to state:

> All Objections filed to the Sale Motion that were not withdrawn prior to or at the Sale Hearing are hereby overruled. Moreover, except as set forth below, any creditor, prospective purchaser, counterparty to an Assumed Lease, or other party in interest that did not file and serve, on or before September 25, 2009, a written objection to the Sale Motion or the sale contemplated by the Purchase Agreement shall be, and hereby is, conclusively deemed to have waived any objection it may have to the Sale Motion or the Sale and to have waived and released all Encumbrances in or on or with respect to the Assets. Further, any counterparty to an Assumed Lease or Contract shall also be, and hereby is, conclusively deemed to have waived any objection it may have to the assumption and assignment of its contract to Purchaser, and any objection to the cure amount set out in the First Amended Notice of Proposed Assumed Leases and Contracts and Cure Amounts filed by Debtors and Purchaser. Absent a cure objection which has been timely filed, counterparties to the Assumed Leases and Contracts shall be bound by the cure amounts, and shall be deemed to have forever released and waived any claims related to breaches or obligations of any kind under the Assumed Leases and Contracts other than the cure amounts (or amounts set out in any agreement regarding between the Purchaser and the non-Debtor party), which shall satisfy such obligations in full.

Marlin had notice of the Santa Fe bankruptcy, the sale of the entities, and the assignment of the leases. Marlin, however, did not file a proof of claim or object to the sale and assignment.

Nevertheless, according to Marlin, the sale did not conclude the matter. Marlin alleged that not all rents provided for in the leases were paid in full. Marlin asserted $1,313,372.08 was owed in the deficiency of rents due under the leases. In March 2010, Marlin sued Burch in the Trial Court seeking, among other things, enforcement of the guaranty agreements. In April 2010, Burch filed a motion to dismiss, arguing that Marlin lacked a protectable interest in the leases, guaranties, or rents. Additionally, Marlin argued that the lawsuit represented an improper collateral attack on the Bankruptcy Court sale order and that the Trial Court, therefore, lacked jurisdiction. In May 2010, the Trial Court denied the motion to dismiss. In March 2011, Marlin filed a motion for partial summary judgment, seeking a determination that the guaranty agreements were enforceable. In May 2011, Burch

filed a response, contending that Marlin no longer had a protectable interest. In June 2011, the Trial Court denied Marlin's motion for partial summary judgment.

In April 2012, trial was held. Tommy Marlin, President of Marlin, testified, as did Burch. After the trial, the Trial Court entered its final order in September 2012. The Trial Court, in its ruling incorporated into the final order, held that Marlin failed to carry its burden on the conversion and unjust enrichment claims. With respect to breach of contract, the Trial Court held that Marlin had, in fact, carried its burden. The Trial Court stated: "In light of the acknowledgement of the execution of the guaranties, the failure of the complete payment of the amounts due by Santa Fe as the debtor under the lease agreements, Defendant's acknowledged lack of payment under the guaranties after the default by the debtor . . . Plaintiff carried its burden." However, the Trial Court ultimately held that it lacked jurisdiction. The Trial Court stated in this regard:

Having made this determination, the next inquiry is whether the Defendant has carried its burden under any of the affirmative defenses submitted. I have reviewed the language in the guaranties, as well as the loan documents, that purport to continue certain obligations in the face of a bankruptcy filing. I am also aware of the testimony presented by Mr. Marlin concerning the attempts he made on behalf of the Plaintiff to continue to assert the claims of Plaintiff after the filing of the bankruptcy, most of which, however occurring prior to the Section 363 Sale. The e-mail streams noted in Exhibits 13 and 14-5 are also most informative concerning the position taken by Plaintiff relative to the involved equipment and the expectation of Plaintiff before and after the 363 Sale. Of particular importance, however, are the bankruptcy court orders. It is clear that Plaintiff declined to object (or withdrew its objection) to the 363 Sale, regardless of the language in the lease documents asserting that it retained title to the equipment.

Similarly, it is also clear that the proceedings before the bankruptcy court were intended to include not only the rights of the debtor and the listed creditors, but also incorporated "non-Debtors party to any related agreements." Having reviewed the essentially all-encompassing language contained in the orders, I find, as a conclusion of law, that this court lacks jurisdiction to award judgment in Plaintiff's favor and that this matter represents a collateral attack on the bankruptcy court's judgment. *State ex rel. City of Chattanooga v. 2003 Delinquent Taxpayers*, No. E2008-00457-COA-R3-CV, 2009 WL 137216 (Tenn. Ct. App. Jan. 21, 2009) is on all fours with this case. Although I appreciate the arguments of Plaintiff that the assignments to the various banks did not convey the entirety of the Plaintiff's interest in the equipment, Plaintiff

-4-

had the opportunity, if not obligation, to pursue its interests, including the "related agreements" (such as the guaranties), in bankruptcy court. Furthermore, its failure to do so, including the assertion to the Banks and, ultimately, to Burch, that the sale of the assets would be authorized with no amounts due to Marlin Financial Leasing Corp., also supports Defendant's collateral estoppel defense.[3]

This matter is, therefore, dismissed. Costs are to be taxed to the Plaintiff and surety. Defense counsel is to prepare an order reflecting this ruling.

(Citations omitted). The Trial Court denied Marlin's motion to alter or amend. Marlin filed a timely appeal to this Court.

## Discussion

We restate and consolidate Marlin's issues on appeal as one dispositive issue: whether the Trial Court erred in dismissing the case for lack of subject matter jurisdiction.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Whether subject matter jurisdiction exists is a question of law, and our review is *de novo*, with no presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

We have previously discussed subject matter jurisdiction and its significance:

A court must have jurisdiction over the subject matter of the proceeding as well as over the parties. *State ex rel. Whitehead v. Thompson*, No. 01A01-9511-CH-00538, 1997 WL 749465 at *2 (Tenn. Ct. App. Dec. 5, 1997). The question of subject matter jurisdiction relates to a court's power to adjudicate a particular type of controversy. *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

---

[3]"I decline to formally rule in Defendant's favor on the issue of collateral estoppel/issue preclusion as the record before me is unclear concerning the finality of the proceedings before the bankruptcy court." (Footnote in original).

Subject matter jurisdiction "relates to the nature of the cause of action and the relief sought" and "is generally defined by the constitution or statute and conferred by the authority that organizes the courts." *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977). The parties cannot confer subject matter jurisdiction on a court by either appearance, plea, consent, silence, or waiver. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). A court cannot enter a valid, enforceable order without subject matter jurisdiction. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000). Accordingly, when subject matter jurisdiction is questioned the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate its cases. *Staats v. McKinnon*, 206 S.W.3d 541 at 542 (Tenn. Ct. App. 2006). Subject matter jurisdiction may be raised at any time by the parties or by the appellate court *sua sponte* on appeal. *County of Shelby v. City of Memphis,* 211 Tenn. 410, 365 S.W.2d 291 (Tenn. 1963).

*Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *6 (Tenn. Ct. App. Jan. 26, 2009), *no appl. perm. appeal filed*.

As pointed out by the Trial Court, this Court addressed a similar situation in *State ex rel. City of Chattanooga v. 2003 Delinquent Taxpayers*, No. E2008-00457-COA-R3-CV, 2009 WL 137216 (Tenn. Ct. App. Jan. 21, 2009), *no appl. perm. appeal filed*. There, a company that owned real property in Chattanooga filed for bankruptcy. *Id*. at *1. Chattanooga filed a proof of claim for unpaid property taxes. *Id*. Chattanooga did not object to a sale of this property. *Id*. Following the sale, Chattanooga filed suit, attempting to collect unpaid taxes from the purchaser of the property. *Id*. at *2. We stated, *inter alia*:

The trial court also correctly ruled that the City was barred from collaterally attacking the Delaware Bankruptcy Court's valid final order in Tennessee Chancery Court. This court recently observed the following principles regarding the rule against collateral attack upon another court's judgment:

"A collateral attack is an attempt to avoid, defeat, or evade a judgment, or to deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." 50 C.J.S. *Judgments* § 505 (1997). It is well settled that a judgment or order cannot be collaterally attacked

-6-

unless it affirmatively appears, on the face of the record, "(1) that the Court had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party, or his privies." *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996). However, "[w]here no relief is sought against a judgment, as, for instance, where the proceeding is for the purpose of construing the judgment, or determining its scope and effect or its nature, there is no infraction of the rule against collateral attack."  50 C.J.S. *Judgments* § 505 (1997).

*Andrews v. Fifth Third Bank*, 228 S.W.3d 102, 107-08 (Tenn. Ct. App. 2007); *see also Sims v. Adesa Corp.*, No. E2007-00899-COA-R9-CV, 2008 WL 793786, at *5 (Tenn. Ct. App. E.S., filed Mar. 25, 2008), *perm. app. denied* Oct. 27, 2008.

In this case, the Bankruptcy Court's order expressly states that governmental entities are "forever barred, estopped and permanently enjoined from asserting" any prior "liens, claims, encumbrances and interests" against the real property at issue, so it is clear that the City's request that the Chancery Court enforce an allegedly unpaid tax lien incurred prior to the bankruptcy action is a direct attack on the earlier judgment.  It is equally clear that none of the exceptions to the rule against collateral attack as discussed in *Andrews* applies here because, among other reasons, the valid jurisdiction of the Bankruptcy Court has not been questioned.  Any claim the City had should have been raised in the Delaware Bankruptcy Court, which retained jurisdiction and in which the City had notice of all pertinent proceedings and ample opportunity to present its arguments regarding the sale of debtor's assets and the Bankruptcy Code.  We therefore affirm the trial court's ruling that the City is barred from asserting this action in state chancery court.

*State ex rel. City of Chattanooga*, 2009 WL 137216, at *5.

We agree with the Trial Court that *State ex rel. City of Chattanooga* is on point with the present case.  While perhaps not "on all fours" with the instant appeal, *State ex rel. City of Chattanooga* is sufficiently analogous for persuasive purposes.  In this case now before us, the Bankruptcy Court deemed claims related to the leases at issue satisfied.  Marlin

declined to object to the sale of the equipment despite being placed on notice of said sale. Given the clarity of the Bankruptcy Court's orders, we are hard-pressed to see how the Trial Court could provide Marlin its requested relief.

Marlin points to *Hickory Springs Mfg. Co., Inc. v. Evans*, 541 S.W.2d 97 (Tenn. 1976), wherein a creditor demanded payment from guarantors under a guaranty agreement in the context of a voluntary settlement between the debtor and creditor. Ultimately, our Supreme Court held, among other things:

> By the terms of the agreement, the guaranty is not expressly limited to involuntary situations, nor do we think the parties intended the agreement to be so limited. As the terms of a commercial guaranty agreement are to be construed as strongly against the guarantor as the sense will admit, *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801 (Tenn. 1975), we hold that the agreement contemplated voluntary as well as involuntary settlements and compromises, and that respondents remain liable on their guaranty.

*Hickory Springs Mfg. Co., Inc.*, 541 S.W.2d at 99.

Marlin asserts that the instant case is a straightforward guaranty case, and that Burch has obligations according to the terms of the guaranties. We believe *Hickory Springs Mfg. Co., Inc* to be inapposite. The Bankruptcy Court's clear orders here are significant and dispositive–the sale orders declared the debt satisfied in full.

Marlin also points to the 2011 U.S. Supreme Court opinion *Stern v. Marshall*, - - - U.S. - - - -, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011) for the proposition that a bankruptcy judge cannot nullify a contract between parties that are not in front of the bankruptcy court. The U.S. Bankruptcy Court for the Eastern District of Michigan conducted a succinct review and analysis of *Stern*, which we quote from:

> In *Stern v. Marshall*, the Supreme Court held that the "judicial power of the United States" can only be exercised by an Article III court and "that in general, Congress may not withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." 131 S.Ct. at 2608–12. The Court held that a bankruptcy court therefore lacks the constitutional authority to enter a final judgment on a debtor's counterclaim that is based on a private right when resolution of the counterclaim is not necessary to fix the creditor's claim. 131 S.Ct. at 2611–19. The Court described the issue before it as "narrow." 131 S.Ct. at 2620.

The Sixth Circuit has adhered to a narrow reading of *Stern* in the two cases that have addressed the issue: *Onkyo Europe Elect. GMBH v. Global Technovations Inc.* ( *In re Global Technovations Inc.*), 694 F.3d 705 (6th Cir. 2012), and *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

In *Global Technovations*, the Sixth Circuit summarized *Stern* as follows:

> *Stern*'s limited holding stated the following: When a claim is "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy," the bankruptcy court cannot enter final judgment. *Id*. at 2611. In those cases, the bankruptcy court may only enter proposed findings of fact and conclusions of law. *Ibid*.

694 F.3d at 722. Based on this view of *Stern*, the *Global Technovations* court held that the bankruptcy court did have the authority to rule on the debtor's fraudulent transfer counterclaim against a creditor that had filed a proof of claim. *Id*.

In *Waldman*, the Sixth Circuit summarized the holding of *Stern* as follows:

> When a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate—as in *Katchen [ v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ]—the bankruptcy court's authority is at its constitutional maximum. 131 S.Ct. at 2617–18. But when a debtor pleads an action arising only under state-law, as in *Northern Pipeline [v. Marathon Pipe Line Co.* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ]; or when the debtor pleads an action that would augment the bankrupt estate, but not "necessarily be resolved in the claims allowance process[,]" 131 S.Ct. at 2618; then the bankruptcy court is constitutionally prohibited from entering final judgment. *Id*. at 2614.

698 F.3d at 919. Based on this view of *Stern*, the *Waldman* court held that the bankruptcy court lacked authority to enter a final judgment on the debtor's

prepetition fraud claim against a creditor that was not necessary to resolve in adjudicating the creditor's claim.

*In re City of Detroit, Michigan*, 2013 WL 5425104, at \*\*2-3 (Bankr. E.D. Mich. Sept. 26, 2013) (footnote omitted).

We acknowledge *Stern* and the subsequent opinions applying that opinion, but we fail to see what specific pertinence it has to the instant appeal. Here, there is no counterclaim of a bankruptcy estate. Rather, Marlin's suit constitutes a collateral attack on the Bankruptcy Court's judgment that the underlying debt had been satisfied in full. As such, consistent with our holding in *State ex rel. City of Chattanooga*, we hold that the Trial Court correctly held that it lacked subject matter jurisdiction in this attempted collateral attack on the decision of the Bankruptcy Court. We affirm the judgment of the Trial Court.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Marlin Financial & Leasing Corp., and its surety, if any.

_____
D. MICHAEL SWINEY, JUDGE