IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2017 Session

## JAMES DAVIS D/B/A DAVIS AUTO REPAIR v. TENNESSEE BOARD OF WATER QUALITY, OIL, & GAS

**Appeal from the Chancery Court for Shelby County**
**No. CH-15-0046-1      Walter L. Evans, Chancellor**

———————————————————

**No. W2016-00870-COA-R3-CV**

———————————————————

After Appellant failed to comply with the terms of a storm water permit issued to him, he was fined $5,000.00 by the Tennessee Department of Environment and Conservation. The fine was upheld by an administrative law judge and, upon judicial review, by the Shelby County Chancery Court. For the reasons stated herein, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Jimmie D. Drewry, Memphis, Tennessee, for the appellant, James Davis.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Wilson S. Buntin, Senior Counsel, for the appellee, Tennessee Board of Water Quality, Oil, and Gas.

## OPINION

### Background and Procedural History

In March 2010, the Tennessee Department of Environment and Conservation ("TDEC") conducted an inspection at James Davis's business, Davis Auto Repair,[1] in response to a complaint that personnel at the facility were dumping oil onto the ground

---

[1] The style of this case and the record reflect that the Petitioner/Appellant is James Davis d/b/a Davis Auto Repair, an individual proprietorship. References to Mr. Davis throughout this opinion should also be considered references to Davis Auto Repair, as they are synonymous.

and into an onsite storm drain. Although this particular complaint apparently proved to be unfounded, TDEC determined that Mr. Davis needed coverage under the Tennessee Multi-Sector Storm Water Permit. As detailed in a notice sent by TDEC to Mr. Davis, the March 2010 inspection revealed, among other things, the following: (1) "[v]ehicles on the property were leaking oil, and the oil was not being contained," (2) "[c]ar batteries were observed outside and exposed to storm water," (3) "[o]il-stained soil was . . . observed in several areas of the property," and (4) "[o]il residue was observed in several areas of the property exposed to storm water." Mr. Davis thereafter completed a notice of intent form to apply for a storm water permit. There is no dispute that he was granted permit coverage following his application.

In August 2012, TDEC conducted a compliance inspection. As is relevant here, the inspection revealed multiple violations with respect to the acquired Tennessee Multi-Sector Storm Water Permit. In a letter sent to Mr. Davis dated August 14, 2012, TDEC outlined these violations, which included the following: (1) unavailability of quarterly inspection reports, (2) failure to conduct sample collection, (3) unavailability of compliance inspection evaluation reports, (4) failure to implement appropriate best management practices to contain oil spills, and (5) unavailability of a storm water pollution prevention plan. In addition to directing Mr. Davis to submit a response detailing the steps he would take to address his noncompliance with the permit, TDEC's letter requested that he submit a copy of the facility's storm water pollution prevention plan by September 10, 2012. Although this September 10 deadline was later extended, Mr. Davis failed to comply with the extended deadline.

In a letter dated October 29, 2012, TDEC requested a meeting with Mr. Davis at the Memphis environmental field office. On the date of his meeting with TDEC, Mr. Davis submitted a written response in which he acknowledged that compliance with the permit was still outstanding. In a subsequent letter dated November 13, 2012, TDEC noted that outstanding documents, such as the storm water pollution prevention plan, should be submitted by December 31, 2012.

On February 15, 2013, following continued noncompliance on the part of Mr. Davis, the TDEC Commissioner issued a "Director's Order" in which Mr. Davis was assessed a $5,000.00 civil penalty for various violations of his permit. Following an appeal of this order, a hearing was held before an administrative law judge ("ALJ") on September 19, 2013. As part of Mr. Davis's defense at the administrative hearing, his counsel argued that the underlying permit should never have been issued. Ultimately, however, the ALJ affirmed the Commissioner's assessment, and Mr. Davis thereafter sought judicial review in the Shelby County Chancery Court. In connection with his filing in Chancery Court, Mr. Davis also asserted a claim for declaratory judgment.

On March 9, 2016, the Chancery Court entered an order disposing of Mr. Davis's requests for relief. In addition to upholding the ruling of the ALJ and the $5,000.00 civil penalty assessed against Mr. Davis, the Chancery Court concluded that the asserted declaratory judgment claim should be dismissed. The present appeal followed.

## Issues Presented

Having reviewed the parties' appellate briefs, we are of the opinion that this appeal requires us to consider two main issues:[2]

1. Is Mr. Davis entitled to attack the necessity of his permit in the present proceeding?

2. Was the civil penalty assessed in this case arbitrary or capricious?

## Standard of Review

When Mr. Davis filed his petition for judicial review in the trial court, his petition was brought pursuant to Tennessee Code Annotated section 4-5-322. Under that statute, a court's standard of review is "narrow and deferential." *StarLink Logistics Inc. v. ACC, LLC*, 494 S.W.3d 659, 668 (Tenn. 2016) (citing *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988)). Namely, an administrative decision may be reversed or modified if the decision is:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

---

[2] Although the trial court dismissed the declaratory judgment claim, Mr. Davis waived any issue he may have had with respect to that claim on appeal. Specifically, we note that he expressly stated as follows in his appellate brief: "Appellant will not address the issue of the Declaratory Judgment in this matter[.]"

Tenn. Code Ann. § 4-5-322(h). A decision is arbitrary and capricious if it is not supported by substantial and material evidence. *Jackson Mobilphone Co., Inc. v. Tenn. Public Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993) (citations omitted). Nonetheless, a decision with adequate evidentiary support may still be arbitrary and capricious if occasioned by a clear error in judgment. *Id.* (citations omitted). Specifically, "[a]n arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 111 (citations omitted). With respect to questions of law, we employ a de novo standard of review and afford the trial court no presumption of correctness. *Davis v. Davis*, 223 S.W.3d 233, 238 (Tenn. Ct. App. 2006) (citation omitted).

## Discussion

As an initial matter, we note that the Appellee objects to Mr. Davis's appellate briefing, specifically his compliance with the requirements in Rule 27 of the Tennessee Rules of Appellate Procedure and Rule 6 of the Rules of the Court of Appeals. We do not disagree that Mr. Davis's brief runs afoul of these standards. For example, his brief is replete with factual assertions that are unsupported by citations to the technical record. *See* Tenn. R. App. P. 27(a)(6) (noting that an appellant's statement of facts must contain "appropriate references to the record"); Tenn. Ct. App. R. 6(a)(4) (noting that the written argument shall contain "[a] statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found").

Despite the specified parameters imposed on appellate briefing by the rules of this Court and the rules of appellate procedure, we are free to suspend the requirements of the rules for good cause. *See* Tenn. R. App. P. 2; Tenn. Ct. App. R. 1. Therefore, although the failure to provide a compliant appellate brief can subject an appeal to dismissal, *see Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000), dismissal is not mandatory. Here, inasmuch as Tennessee public policy favors a resolution of disputes on their merits, *see, e.g., Norton v. Everhart*, 895 S.W.2d 317, 322 (Tenn. 1995), we will soldier on and consider the substance of this appeal notwithstanding the briefing deficiencies that exist. We caution litigants that our decision to entertain the merits of the issues presented in this case does not mean that we will be as forgiving in the future.

### Mr. Davis's Challenge to the Necessity of the Permit

Although there is no dispute in this appeal that Mr. Davis failed to comply with the issued permit, Mr. Davis submits that this fact is not dispositive. As he did in the administrative hearing, Mr. Davis argues that he should not be subject to the permit. As

we understand his argument, he reasons that because he does not actually require the permit he obtained, the civil penalty assessed against him is a nullity.

If we were to find favor in Mr. Davis's argument, we would necessarily be required to conclude that Mr. Davis is entitled to attack the necessity of his permit in the present proceeding. Having reflected on the issue, however, we conclude that such a challenge to the permit is without merit. Simply put, Mr. Davis's challenge to his permit in the present action is barred by the doctrine of collateral attack.

A collateral attack is one in which a party attempts to "'avoid, defeat, or evade a judgment, or to deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.'" *Andrews v. Fifth Third Bank*, 228 S.W.3d 102, 107 (Tenn. Ct. App. 2007) (quoting 50 C.J.S. *Judgments* § 505 (1997)). Whereas a void judgment is subject to collateral attack, a voidable judgment is not. *See Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996). As this Court has previously explained:

> It is well settled that a judgment or order cannot be collaterally attacked unless it affirmatively appears, on the face of the record, "(1) that the Court had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party, or his privies."

*Andrews*, 228 S.W.3d at 107-08 (quoting *Gentry*, 924 S.W.2d at 680).

Although the above authorities refer to the impropriety of collateral attacks on *judgments* that are not void, the doctrine of collateral attack is also applicable to decisions of administrative agencies. *See State ex rel. Ragsdale v. Sandefur*, 389 S.W.2d 266, 271 (Tenn. 1965) ("If it can be said a voidable decision of an administrative board can be collaterally attacked in all cases by way of a defense to a suit for the enforcement of the order or decision or by suit not in the nature of a direct attack, then we fail to see how an order or decision of a board would ever become final and not subject to review by the courts[.]"). As the Tennessee Supreme Court has outlined:

> Attempts to question, in a subsequent proceeding, the conclusiveness of a prior decision of an administrative agency have often been rejected by the courts on the ground that, like the judgment of a court, a determination made by an administrative agency in its judicial or quasi-judicial capacity is not subject to collateral attack, at least where the administrative agency has acted within its jurisdiction, the determination is not void upon its face, and

- 5 -

the ground of attack asserted relates to mere error or irregularity which is not jurisdictional[.]

*Id.* at 272 (quoting 2 Am. Jur. 2d *Administrative Law* § 493).

Here, Mr. Davis is attempting to collaterally attack the prior issuance of the permit to him. He attacks the legitimacy of the permit, years after its issuance, solely as a means to evade the assessment of a civil penalty against him for multiple violations of the permit. Although he argues that there was no jurisdiction for TDEC to issue him a permit, we reject his argument. We agree with the Appellee that there was jurisdiction to issue the permit[3] and that there is nothing on the face of the permit to indicate that the issuance of permit coverage should be deemed void. Mr. Davis's alleged jurisdictional arguments are simply misplaced. As we perceive it, what Mr. Davis's arguments actually implicate is not a jurisdictional issue, but a non-jurisdictional error. In fact, when Mr. Davis's arguments are studied closely, it is clear that he is complaining about the fact that his property and scope of activities were allegedly misclassified. Indeed, in a brief filed with the trial court, Mr. Davis submitted that the "issuance of the Permit was based upon a mistake of fact." The essence of his argument is thus clearly tied to an alleged error on the part of TDEC in determining that his property needed a storm water permit.

The suggestion that TDEC allegedly misclassified Mr. Davis's business activities does nothing to alter the jurisdictional authority of TDEC to issue a storm water permit. TDEC had authority to make a determination that Mr. Davis's activities required a permit, and it had the authority to issue a permit upon making such a determination. Whether that determination was in error is beyond the purview of this appeal, but even assuming *arguendo* that it was error, such an error does not alter the fact that the issuance of the permit was within the jurisdiction of TDEC. There is a distinction between "the mere erroneous exercise of a power granted, and the usurpation of a power where none exists." *Brown v. Brown*, 281 S.W.2d 492, 499 (Tenn. 1955). Inasmuch as the alleged error here would not make the prior issuance of the permit void, Mr. Davis is not entitled to collaterally attack the permit in this proceeding.

*Civil Penalty*

In light of our resolution of the issue above, we now turn to consider the civil penalty assessed against Mr. Davis for violating his permit. According to Mr. Davis, the assessment of a $5,000.00 penalty against him was arbitrary and capricious. We, like the trial court, reject this conclusion.

---

[3] As noted by the Appellee, under Tennessee Code Annotated section 69-3-108(l), "[w]here the commissioner finds that a category of activities or discharges would be appropriately regulated under a general permit, the commissioner may issue such a permit."

As previously noted, a decision is arbitrary and capricious if it is not supported by substantial and material evidence. *Jackson Mobilphone Co., Inc.*, 876 S.W.2d at 110 (citations omitted). Moreover, "[a]n arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 111 (citations omitted). In this case, the evidence at the administrative hearing established that Mr. Davis had violated his permit in many ways. Among other things, he had not properly provided required reports or done required site sampling. Although Mr. Davis did bring a storm water pollution prevention plan to the hearing, the submission of such a plan was years past due. During the course of the administrative hearing, Donovin Mulvaney, an employee with TDEC's Division of Water Resources, testified how the $5,000.00 civil penalty against Mr. Davis was assessed. According to Mr. Mulvaney, he used a uniform guidance document and matrix to determine the penalty. Mr. Mulvaney testified that he considered two factors in connection with his use of the matrix: "deviation from requirement" and "potential for harm." Each of these factors was then assigned weight and classified in terms of "major, moderate, or minor." With respect to the violations in this case, Mr. Mulvaney testified that the "deviation from requirement" was "major" inasmuch as multiple permit requirements were not met. Although Mr. Mulvaney determined that the "potential for harm" stemming from the violations was generally "minor," he did determine that Mr. Davis's "failure to monitor" violation posed a "moderate" potential for harm.

Although Mr. Davis's violations in this case spanned several years, he was ultimately only assessed a $5,000.00 civil penalty. By statute, a person who violates the terms or conditions of a permit is potentially subject to a civil penalty up to $10,000.00 "per day for each day during which the act or omission continues or occurs." Tenn. Code Ann. § 69-3-115(a)(1). We cannot say the penalty assessed here is arbitrary and capricious in light of Mr. Davis's widespread noncompliance with his permit over a period spanning several years. As such, we find no error in the decision of the trial court upholding the ruling of the ALJ.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are assessed against the Appellant, James Davis, and his surety, for which execution may issue if necessary. This case is remanded for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE