STATE *ex rel. v.* J. F. BROWN. ▊

(*Knoxville.* September Term, 1929.)

Opinion filed November 16, 1929.

C. E. KEYES, S. J. HAMBY and TOLLETT & TOLLETT, for complainant, appellants.

ROBERTS & ROBERTS and GEO. P. BURNETT, for defendant, appellees.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The chancellor dismissed the original and amended bill of the complainants, upon demurrer, and complainants have appealed to this Court.

While originally filed in the name of the State, it was conceded during the progress of the case in the chancery court, that it is to be treated as a taxpayers' bill, filed for the purpose of restraining an unlawful expenditure of public funds. It is so treated on the briefs filed in this Court.

The merits of the case involve the respective rights, powers and duties of the County Board of Education of Cumberland County and the Quarterly County Court, with regard to the location and purchase of a site for a

public high school building, the erection of the building, and the control of the expenditure of funds provided for the purpose, by a bond issue authorized by the Quarterly County Court.

Chapter 60 of the Public Acts of 1911, confers power upon the Quarterly County Court to issue and sell bonds for the purpose of acquiring school property and erecting buildings thereon. It was held by this court in *McCord* v. *Marshall County,* 152 Tenn., 675, that this statute was not repealed by the Public Acts of 1925, chapter 115, known as the General Education Law. Presumably acting under the authority of this statute, the Quarterly County Court caused to be issued and sold, county bonds in the sum of $75,000 for the expressed purpose of acquiring a suitable site and erecting a new, modern high school building in the town of Crossville, Tennessee. By resolution of the County Court, a committee, composed of six members of the court and a citizen who is not a member, was vested with power to select and purchase a suitable site for the building, and "to let the contracts and adopt plans and oversee the building."

The amended bill avers that the proceeds of these bonds, amounting to about $76,000, are in the custody of the county trustee, held by him as a separate school fund.

It is averred by the bill that the sole power to control the expenditure of this fund, to select the site for a school building, to determine the character of the building, and to let contracts for its erection, is conferred by law upon the County Board of Education of Cumberland County, and that in undertaking to confer this power upon a committee appointed by it, the Quarterly Coun-

ty Court was acting illegally and without any authority in law.

It is averred in the amended bill that the County Board of Education has not only failed to take action to secure possession and control of the funds involved, but has "refused and continues to refuse to act until this suit is terminated." A subsequent averment of the bill charges that the County Board of Education has refused and neglected to take any action in this matter, with the exception of complainant, G. A. Hailey, who is a member of the County Board of Education.

In addition to the general charge that the County Court and its committee are proceeding illegally and in violation of law, the bill charges that the committee, by a vote of four to three, had entered into a contract with a firm of architects, by which they had agreed to pay said firm a commission of six per cent, when equally as good service could be had from others for a commission of four per cent; that the committee had agreed to pay an excessive price for the site selected for the building, and that the site selected was so located as to result in a necessary expenditure of city funds for sidewalks, sewerage, etc., which could not be justified. It is also charged that the "so-called committee of the County Court is proceeding without competitive bids."

A further averment of the bill recites the fact that a majority of the members of the committee of the County Court had endeavored to have the County Board of Education ratify and adopt the contracts agreed upon by the committee; which action, complainants aver, was such an acknowledgment of the jurisdiction of the County Board of Education in the premises as to constitute an estoppel against the committee to further question the

right of the Board of Education to the custody and control of the funds involved.

The report of the committee of the County Court first appointed to determine the character of building required and to select a site therefor, made a part of the bill, recites that the committee had acted "in company with a like committee from the Board of Education."

We fully concur in the conclusion of the learned chancellor, that the averments of the original and amended bill, with respect to waste of public money, in the matter of the architects' contract and the location of the site selected for the school building, are not sufficient to justify any inference by a court of equity at the suit of taxpayers. To review the action of the County Court and its committee in such matters could amount to nothing more than to substitute the judgment and exercise of discretion of a court for the judgment and discretion of administrative officers. *Reams v. Board of Mayor & Aldermen,* 155 Tenn., 222.

Having concluded that a particular site is the most suitable and most desirable for the school building, the contract for its purchase is not to be declared void as a waste of public money because the owner refused to part with it for a sum which the purchasing committee considered to be its reasonable market value. No fraud or collusion is charged, and it must be presumed that the committee agreed to pay no more than it considered the property was worth to the county for the particular purpose, nor more than the committee considered it would cost the county to acquire the lot by condemnation, including the expenses of such a suit.

Nor is it to be considered a waste of public funds that a firm of architects was employed at a six per cent

commission, when other architects could be employed for a commission of four per cent. The personal element involved in the ability, training, experience, and integrity of the architect selected, presumably considered by the committee in making the selection, must be treated as justifying the contract to pay the larger commission. Whether other architects could be found who would render "just as good service" for a smaller commission, must be left to the administrative officers in charge of the building program.

■ The averments of the bill that the committee is "proceeding without competitive bids" are treated as having reference to the contracts for the purchase of a site and for the services of an architect, since they are the only two contracts made by the committee, as disclosed by the bill. The nature of these contracts, as set out in the two last preceding paragraphs, renders it impracticable if not impossible that they be submitted to competitive bidding. In our opinion, a general requirement that contracts made by a public commission or committee be submitted to competitive bidding does not apply to a contract for the purchase of a particular piece of land selected as the site of a proposed public building, nor to a contract for the personal services of an architect.

■ The case for injunctive relief stated in the bill is, therefore, reduced to the averment that the power and responsibility of locating the school and constructing the building are vested by law in the County Board of Education, and that the county court and its committee are acting illegally and without authority of law in the premises.

We agree with the chancellor in his holding that complainants do not show themselves entitled to maintain their suit on that theory.

The averments of the bill do not show that the burden of the complainants, as taxpayers, will be increased by reason of the fact that the site of the building was selected, and that its construction is proposed to be controlled, by the county court rather than by the Board of Education. And in *Reams* v. *Board of Mayor and Aldermen of McMinnville,* 155 Tenn., 222, it is held that to maintain a suit of this character by taxpayers, it is not sufficient merely to show an illegal action on the part of county officers, but it is necessary to show that some increased burden of taxation would likely result from the illegal exercise of power. See, also, *Pope* v. *Dykes,* 116 Tenn., 230. The bill charges that the committee of the county court submitted its proposals to the Board of Education for approval, and fails to charge that approval was withheld or that the committee has taken any action which the Board of Education would not have taken if the matter had been left to that Board. Therefore, no increased burden of taxation, resulting from the alleged illegal exercise of power, is charged in the bill.

The amended bill avers that the County Board of Education have failed to take action to secure possession and control of the proceeds of the bond issue, and "have refused and continue to refuse to act until this suit is terminated." There was no such averment in the original bill, and the language of the amended bill clearly implies that whatever demand for action was made by complainants upon the members of the Board of Education was not made until after this suit

was instituted, and that their refusal to act was made on account of the pendency of the suit. This is not a case in which the interests of the complainants as taxpayers are antagonistic to the interests of the members of the Board of Education, as in *Burns* v. *Nashville,* 142 Tenn., 541, 574, and *Malone* v. *Peay,* 157 Tenn., 429; and without previous demand upon the Board of Education the complainants were not entitled to invoke the processes of the chancery court to restrain the county court or its committee.

The chancellor's decree dismissing the bill is accordingly affirmed.