STATE *ex rel. v.* SAFLEY, CHAIRMAN, *et al.*

*(Nashville,* December Term, 1937.)

Opinion filed Feb. 12, 1938.

386

C. P. HUTCHESON, of Sparta, for appellants.

TURNER & HASTON, of McMinnville, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill was filed by taxpayers to enjoin issuance of $20,000 of bonds as provided by resolution of the county court adopted by a majority vote at its October session, 1937. The chancellor dismissed the bill, and complainants appealed.

The county court acted under the authority of Code 1932, sections 2557-2569, being chapter 5, "Bonds for Schoolhouses; and for Repairing, Furnishing, and Equipping them," under Title 7 of the Code, headed "Education."

The original bill challenged the action of the county

court (1) on the ground that there existed no necessity for the proposed school building, and that the expenditure would involve a waste of money; and (2) because the provisions of Code, sections 10215-10217, were not complied with.

The chancellor correctly held (1) that the discretion vested in the county court could not be thus challenged; that the judgment of the complainants, or of the court, could not be thus substituted for that of the county court. See *State ex rel.* v. *Brown,* 159 Tenn., 591, at page 596, 21 S. W. (2d), 721, citing *Reams* v. *Board of Mayor & Aldermen of McMinnville,* 155 Tenn., 222, 291 S. W., 1067. And (2) it was also correctly held that the Code, sections 10215-10217 were without application; these sections referring to ''applications for appropriations'' by the county court, requiring such applications to be made in advance and to be entered on a book to be kept by the clerk for such purpose. The authorization of the issuance of bonds here involved was not an ''appropriation'' within the purview of these sections. The action was here taken under other specific sections of the Code which provide in detail the procedure. Section 2557, being the first section of chapter 5, is as follows:

''*Quarterly county courts may issue and sell bonds for school buildings, etc.*—The counties through their respective quarterly county courts are authorized to issue and sell bonds for the purposes and in the manner hereinafter provided.''

And, after prescribing various details respecting the form, sale, terms, redemption, etc., of the bonds, section 2567 reads:

''*Quarterly county court may issue said bonds, how; limit of amount.*—Said bonds may be issued by the quar-

terly county court of any county by resolution by a majority of said members of said quarterly county court at any regular meeting thereof; provided, however, that said county shall not issue an amount of bonds to exceed three per cent. of the value of the taxable property for said county.''

It is conceded that all provisions of this chapter 5 have been complied with, and there is no claim that the 3 per cent. limitation above quoted has been violated.

But by an amendment to the original bill the issuance of these bonds is challenged because not authorized by an election of the qualified voters of the county, as provided by Code, section 10248, chapter 69, Acts of 1923.

We are of opinion that the chancellor was again correct in holding that the general provisions of this section are not applicable to a proceeding under the special provisions of chapter 5, specifically relating to the issuance of bonds for the limited purposes described; that is, for schoolhouses.

It will be seen that by section 2567, *supra*, it is specifically provided that bonds for this purpose may be issued by the quarterly county court ''by resolution by a majority of said members of said quarterly county court at any regular meeting thereof.'' This specific statutory authorization prevails over the general requirement of section 10248 for a majority vote of the qualified voters of the county, and constitutes an exception. This is true not only because the special provision of the Code prevails over the general provision invoked (see 25 R. C. L., page 927, citing authorities), but if there be apparent conflict, section 13 of the Code has controlling application, reading as follows:

*"Conflicts.*—If provisions of different chapters or articles of the Code appear to contravene each other, the provisions of each chapter or article shall prevail as to all matters and questions growing out of the subject matter of that chapter or article."

Both of the allegedly conflicting sections under consideration are parts of the Code of 1932, and in this sense were enacted contemporaneously. And looking to the acts thus codified, it appears that these special provisions authorizing quarterly county courts to issue school bonds on a majority vote of the members of that court were enacted in 1911, while the general provision for a majority vote of the electors was enacted in 1923.

Directly in point is the following from Black on Interpretation of Laws, 116:

"As a corollary from the doctrine that implied repeals are not favored, it has come to be an established rule in the construction of statutes that a subsequent act, treating a subject in general terms and not expressly contradicting the provisions of a prior special statute, is not to be considered as intended to affect the more particular and specific provisions of the earlier act, unless it is absolutely necessary so to construe it in order to give its words any meaning at all."

So, in Sedgwick on the Construction of Statutory and Constitutional Law, the author observes, on page 98, with respect to, this rule:

"The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms or treating the subject in a general manner, and not expressly contradicting the original

act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all.''

And, MR. JUSTICE BREWER, in his opinion in *Rodgers* v. *United States,* 185 U. S., 83, 22 S. Ct., 582, 584, 46 L. Ed., 816, quotes with approval the following from *Crane* v. *Reeder,* 22 Mich., 322, 334, which has application to the instant case:

''Where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the legislature is not to be presumed to have intended a conflict.''

Finally, the views indicated are in harmony with our Tennessee cases, and find direct support in the following excerpt from the opinion of CHIEF JUSTICE NEIL in *Board of Park Commissioners* v. *Nashville,* 134 Tenn., 612, at page 629, 185 S. W., 694, 698:

''Now, while it is true that the language of section 27 is very broad, yet in arriving at the intention of the Legislature we are not confined to the literal meaning of words, certainly not to the literal meaning of words in a single section when they are in conflict with words used in a later section devoted to a special subject standing apart from the general subject to which the former section is devoted. Where there is a general provision

applicable to a multitude of subjects, and also a provision which is particular and applicable to one of these subjects, and inconsistent with the general provision, it does not necessarily follow that they are so inconsistent that they both cannot stand. The special provision will be deemed an exception, and the general provision will be construed to operate on all the subjects introduced therein except the particular one which is the subject of the special provision. 2 Lewis' Suth. Stat. Const. (2 Ed.), section 345. Or as said in *Hayes* v. *Arrington,* 108 Tenn., 494, 499, 68 S. W., 44, 46:

" 'A special provision in a statute will control a general provision which would otherwise include that mentioned in the particular provision.' "

And in the opinion in *Burnett* v. *Maloney,* 97 Tenn., 697, 37 S. W., 689, 691, 34 L. R. A., 541, this rule of construction was applied; the opinion quoting from BLACK, *supra,* the statement that, "The rule is founded upon or expressed by the maxim, *Generalia specialibus non derogant."*

The general subject of bonds for public purposes is dealt with in Code section 10248, while Code sections 2557-2569 are directed to the special subject-matter of bonds for schoolhouses.

It results that there is no error in the decree of the chancellor dismissing the bill, and his decree is affirmed.