IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 13, 2018 Session

## BRANDON BURKS ET AL. v. SAVANNAH INDUSTRIAL DEVELOPMENT CORPORATION OF THE CITY OF SAVANNAH TENNESSEE

Appeal from the Chancery Court for Hardin County
No. CH-417  Carma Dennis McGee, Chancellor

_____

No. W2018-00166-COA-R3-CV

_____

Appellants, owners of property near a proposed industrial park site, appeal the trial court's grant of Appellee Savannah Industrial Development Corporation's Tennessee Rule of Civil Procedure 12.02(6) motion.  Appellants sought a declaratory judgment precluding the City of Savannah and, specifically, its industrial development corporation, from purchasing land outside the city's corporate limits for development of an industrial park for the benefit of both the city and Hardin County.  The trial court applied the Industrial Development Corporations Act, Tenn. Code Ann. § 7-53-101, *et seq.* and the Industrial Park Act, Tenn. Code Ann. § 13-16-201, *et seq.* and found that there was no prohibition against the industrial development corporation's actions.  The trial court, therefore, granted the industrial development corporation's motion to dismiss and awarded the corporation its attorney's fees under Tennessee Code Annotated section 20-12-119(c)(1).  Because the industrial development corporation is a "governmental entity," we hold that the trial court was precluded from awarding attorney's fees under Tennessee Code Annotated section 20-12-119(c).  Accordingly, we reverse the trial court's award of attorney's fees.  The trial court's order is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Jeremy R. Durham, Franklin, Tennessee, for the appellants, Brandon Burks, and Stephen Hood.

Dennis W. Plunk, Savannah, Tennessee, for the appellee, Savannah Industrial

Development Corporation of the City of Savannah, TN.

**OPINION**

**I. Background**

On May 10, 2017, Savannah Industrial Development Corporation of the City of Savannah, TN ("SIDC," or "Appellee"), a chartered industrial development corporation of Savannah, Tennessee (the "City),[1] resolved to request up to $500,000 from the City to "purchase the 58 acres currently known as the Turnbow Property located . . . [in] Hardin County . . . to become part of the Savannah Industrial Park . . . ." The Turnbow Property is located approximately six miles outside the City's corporate limits and is outside the City's urban growth boundary, *see* further discussion *infra*.

Concerning the procurement of the Turnbow Property, by resolution of July 6, 2017, the City Commissioners resolved to pay "up to one-third of the actual land acquisition costs, which in total will not exceed $500,000 from Savannah and Hardin County combined . . . ." The industrial park, which was slated to be built on the Turnbow Property, was a joint-project between Hardin County and the City. Ultimately, the City voted to approve $166,700 for the project; Hardin County voted to approve $333,300 for the project.

Brandon Burks and Stephen Hood (together, "Appellants") are residents and landowners of Crump, Tennessee. Their respective properties are located on the same road as the Turnbow Property. On August 1, 2017, Appellants filed a complaint for declaratory judgment and injunctive relief in the Chancery Court for Hardin County ("trial court"). Appellants challenge "the legal capacity of [SIDC] . . . to exercise powers as a government corporation of Savannah, Tennessee within the corporate limits of Crump, TN." Appellant's sought, *inter alia*, an injunction precluding SIDC from purchasing the Turnbow Property. SIDC filed an answer on August 31, 2017. Concurrent with its answer, SIDC filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss Appellant's complaint. Appellants opposed the motion to dismiss, which was heard on October 3, 2017. By order of January 24, 2018, the trial court granted SIDC's motion to dismiss the complaint. On May 3, 2018, the trial court filed an amended order, granting the motion to dismiss and awarding SIDC its attorney's fees in the amount of $7,505.00. Appellants appeal.

**II. Issues**

There are two dispositive issues, which we state as follows:

---

[1] SIDC filed its certificate of incorporation with the Tennessee Secretary of State on June 2, 1978. It has remained in good standing since that time.

1.  Whether the trial court erred in granting SIDC's Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss Appellants' complaint.

2.  Whether SIDC is a governmental entity for purposes of awarding attorney's fees under Tennessee Code Annotated section 20-12-119(c)(1).

### III. Standard of Review

The applicable standard of review was succinctly explained by the Tennessee Supreme Court in *Lind v. Beaman Dodge, Inc.*, as follows:

> The scope of review after the grant or denial of a motion to dismiss involves a question of law. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002). A motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure seeks only to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. *Id*.; *see also Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). In considering a motion to dismiss, the Court is required to take the relevant and material factual allegations in the complaint as true and to construe liberally all allegations in favor of the plaintiff. *Stein*, 945 S.W.2d at 716; *see also Webb*, 346 S.W.3d at 426 (observing that "Tennessee follows a liberal notice pleading standard, which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court" (citation omitted)). Additionally, this Court's review of a trial court's determinations on issues of law is *de novo*, without any presumption of correctness. *Frye v. Blue Ridge Neuroscience Ctr., P.C*., 70 S.W.3d 710, 712 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).
>
> This appeal also involves the interpretation of legislation . . . The construction of statutes . . . [is a question] of law that [is] reviewed de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009); *see also Carter v. Quality Outdoor Prods., Inc.*, 303 S.W.3d 265, 267 (Tenn. 2010) (citing *Perrin v. Gaylord Entm't Co*., 120 S.W.3d 823, 826 (Tenn. 2003)). When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc*., 90

S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn.2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn.1998).

*Lind v. Beaman Dodge, Inc, d/b/a Beaman Dodge Chrysler Jeep et al.*, 356 S.W.3d 889, 894-95 (Tenn. 2011). Furthermore, a basic rule of statutory construction provides that "a general statute concerning a subject must defer to a more specific statute concerning the same subject." *Five Star Exp., Inc. v. Davis*, 866 S.W.2d 944, 946 (Tenn. 1993). This Court stated the basis for this rule in *Koella v. State ex rel. Moffett*:

> Where there is a general provision applicable to a multitude of subjects, and also a provision which is particular and applicable to one of these subjects, and inconsistent with the general provision, it does not necessarily follow that they are so inconsistent that they both cannot stand. The special provision will be deemed an exception, and the general provision will be construed to operate on all the subjects introduced therein except the particular one which is the subject of the special provision.

*Koella v. State ex rel. Moffett*, 405 S.W.2d 184, 189 (Tenn. 1966) (quoting *State v. Safley*, 172 Tenn. 385, 112 S.W.2d 831 (Tenn. 1938)).

## IV. Analysis

### A. Grant of Tennessee Rule of Civil Procedure 12.02(6) Motion

As noted above, the crux of Appellants' argument is that SIDC is without legal authority to exercise its statutorily-granted powers outside the corporate boundaries of Savannah, Tennessee and, specifically, in areas that are also within the corporate boundaries of another city (the Turnbow Property is located within the corporate limits of Crump, Tennessee). In its order granting SIDC's motion to dismiss, the trial court held that "there are no such restrictions either stated or implied in the controlling Statutes of Tennessee." We now turn to review the applicable legislation.

We begin with the general statutes concerning the powers of a municipality, such as the City, and their municipal corporations, such as SIDC. It is undisputed that Savannah operates under a city manager-commission charter. The general powers of such municipalities are enumerated at Tennessee Code Annotated section 6-19-101. As is relevant to the instant appeal, the City has power to "[a]cquire or receive and hold, maintain, improve, lease, mortgage, pledge, or otherwise dispose of property, real or personal, and any estate or interest therein, within or **without the city** or state." Tenn. Code Ann. § 6-19-101(8) (emphasis added). Under the plain language of this statute, the City may, as a general rule, purchase real property outside its city limits. Here, however, the question is not whether the City may acquire the Turnbow Property, but whether its municipal corporation, SIDC, may acquire the disputed property. Generally, Tennessee Code Annotated section 6-54-103 provides that "[a]ll municipal corporations [such as SIDC] may, for corporate purposes, hold real estate **beyond their limits**." So, as a general rule, SIDC may hold real estate beyond the City's corporate limits so long as the property is held for "corporate purposes." It is undisputed that the corporate purpose for the acquisition of the Turnbow Property is the establishment of an industrial park for the benefit of both the City and Hardin County; such joint enterprises are specifically authorized under Tennessee Code Annotated section 5-1-113.

Because the project at issue is the creation of an industrial park, we apply the specific statutory scheme established by the Industrial Park Act, Tennessee Code Annotated section 13-16-201, *et seq.* ("IPA"). Tennessee Code Annotated section 13-16-203(1) of the IPA grants a municipality "the power to . . .[a]quire land . . . by . . . purchase . . . and develop the land into industrial parks **within or without** the municipality." (Emphasis added). Tennessee Code Annotated section 13-16-204 states that the municipality "may exercise direct control in the development, operation and maintenance of any industrial park," Tenn. Code Ann. § 13-16-204(a), or may "delegate to an industrial development corporation created under title 7, chapter 53 . . . ." Tenn. Code Ann. § 13-16-204(b). Here, the City chose the second option and delegated the development of the Turnbow Property industrial park to its industrial development corporation, SIDC. As an industrial development corporation, SIDC operates under the Industrial Development Corporations Act, Tennessee Code Annotated section 7-53-101, *et seq.* (the "IDCA"). Tennessee Code Annotated section 7-53-302 of the IDCA grants the industrial development corporation the power to "[a]quire, whether by purchase, exchange, gift, lease, or otherwise, and improve, maintain, equip and furnish one (1) or more projects . . . ." "Projects" are defined, at Tennessee Code Annotated section 7-53-101(13)(G) to include "[a]ny economic development project as defined in § 7-40-103." It is undisputed that the Turnbow Property industrial park constitutes an economic development project. Alternatively, Tennessee Code Annotated section 7-53-310 authorizes the municipality to "acquire a project site by . . . purchase . . . and . . . transfer [the] project site to [the industrial development] corporation by sale . . . or gift." Tennessee Code Annotated section 7-53-310 goes on to specify that "[s]uch project site

may be within **or without the municipality** . . . ." (Emphasis added).

Relying on the foregoing statutory provisions, in its order granting Appellee's motion to dismiss, the trial court held, in relevant part:

> Based upon the foregoing statutes, the Court finds the [Appellants'] claim that [Appellee] is without legal authority to exercise any of its statutorily-granted powers enumerated in Tennessee Code Annotated Title 7, Chapter 53 as a chartered industrial development corporation of Savannah, Tennessee, within the corporate boundaries of any Tennessee municipality excluding the City of Savannah, Tennessee is without merit.
>
> ***
>
> [Appellants] have not shown that any of the actions which have been undertaken by [Appellee] are prohibited by any laws of the State of Tennessee. The statutes above-cited specifically authorize [Appellee] to take action in areas outside of the municipality of Savannah, Tennessee.

The plain language of the relevant statutes supports the trial court's conclusion. As discussed above, both the City and its industrial development corporation may purchase or hold property, both within and without the municipality, for economic development projects such as industrial parks. Nonetheless, in support of their appeal of the trial court's order, Appellants rely on Tennessee Code Annotated section 6-58-107(a), which addresses a municipality's "comprehensive growth plan."

Tennessee Code Annotated section 6-58-107(a), on which Appellants' rely, provides that

> [a] growth plan for each county shall be submitted to and approved by the local government planning advisory committee in accordance with 6-58-104. After a growth plan is so approved, all land use decisions made by the legislative body and the municipality's or county's planning commission shall be consistent with the growth plan.

Appellants contend that this statute "prevents Tennessee Cities from making 'land use decisions' outside their 'urban growth boundary.'" An "Urban growth boundary" is defined, at Tennessee Code Annotated section 6-58-101(9), as "a line encompassing territory established in conformance with § 6-58-106(a) and approved in accordance with the requirements of § 6-58-104." Tennessee Code Annotated section 6-58-106(a) enumerates the information the urban growth boundary must identify, including such things as "the likely site of high density commercial, industrial, and/or residential growth over the next twenty (20) years." Tenn. Code Ann. § 6-58-106(a)(1)(C). Because the

- 6 -

proposed Turnbow Property industrial park is located outside the City's "urban growth boundary," i.e., outside the corporate limits of Savannah, Appellants argue that the City and its industrial development corporation are precluded from engaging in the project. We disagree.

In the first instance, we find no such prohibition in the plain language of section 6-58-107. In fact, the statute does not specifically address the development of industrial park projects. Rather, as stated in Tennessee Code Annotated section 6-58-102, the purpose of the comprehensive growth plan legislation is

> . . .to establish a comprehensive growth policy for this state that:
>
> (1) Eliminates annexation or incorporation out of fear;
> (2) Establishes incentives to annex or incorporate where appropriate;
> (3) More closely matches the timing of development and provision of public services;
> (4) Stabilizes each county's education funding base and establishes an incentive for each county legislative body to be more interested in education matters; and
> (5) Minimizes urban sprawl.

In this regard, the comprehensive growth plan statutes, including section 6-58-107, are not specifically related to SIDC's role in procuring the Turnbow Property for development of an industrial park. The specific statutes governing this venture include the IPA and the IDCA. "A general statute concerning a subject must defer to a more specific statute concerning the same subject." *Five Star Exp., Inc. v. Davis*, 866 S.W.2d 944, 946 (Tenn. 1993). Having analyzed the applicable provisions of both the IPA and the IDCA, *supra*, we agree with the trial court's conclusion that there is nothing in either statutory scheme that precludes SIDC from procuring the Turnbow Property for purposes of establishing an industrial park as a joint venture between the City and Hardin County. We are not persuaded by the Appellants' argument based on their interpretation of the comprehensive growth plan statutes as these provisions are not specifically related to the project at issue here.

### B. Attorney's Fees

As noted above, in its final order granting SIDC's Rule 12.02(6) motion to dismiss, the trial court awarded SIDC its attorney's fees and costs in the amount of $7,505.00. Tennessee Code Annotated section 20-12-119(c)(1) provides, in pertinent part, that

[w]here a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party . . . against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. . . .

However, at Tennessee Code Annotated section 20-12-119(c)(5)(A), the statute provides that section 20-12-119(c)(1) "shall not apply to . . [a]ctions by or against the state, [or] other governmental entities . . . ." On appeal, Appellants argue that SIDC is a "governmental entit[y];" as such, Appellants contend that the trial court erred in awarding attorney's fees in this case.

Tennessee Code Annotated section 20-12-119(c) does not define the term "governmental entities." However, the term is defined elsewhere in the statutes. For example, in the Governmental Tort Liability Act ("GTLA"), at Tennessee Code Annotated section 29-20-102(3)(A), "governmental entity" is defined, in relevant part, to include "a nonprofit public benefit corporation . . . including any entity with tax exempt status . . . that is appointed by statute . . . ." Other statutes, which do not include a separate definition of governmental entity, rely on the GTLA definition. For example, the Electric Utility Comprehensive Equal Powers and Authority Act, at Tennessee Code Annotated section 65-36-102, defines "municipal utility" and "municipal electric utility" to mean "any governmental entity as defined in 29-20-102[, i.e., the GTLA]." A well-settled tenet of statutory construction is that statutes "in pari materia"—those relating to the same subject or having a common purpose—are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute. ***Belle-Aire Village, Inc. v. Ghorley***, 574 S.W.2d 723, 725 (Tenn.1978); ***Spence v. Miles Laboratories, Inc***., 810 F. Supp. 952 (E.D. Tenn.1992). Accordingly, because the statute at issue here, i.e., Tennessee Code Annotated section 20-12-119(c)(5)(A), does not define the relevant term "governmental entity," we may look to other statutory definitions of that term in order to determine whether SIDC falls within the governmental entity exception to the award of attorney's fees and costs on grant of Appellee's motion to dismiss.

In addition to the definition set out in the GTLA, Tennessee Code Annotated section 4-39-101(3), which statute concerns the payment of taxes by state vendors and subcontractors, defines a "state governmental entity" as "a state agency, department, board, or commission, or a **public** corporation or quasi-public **instrumentality** that performs essential public functions entrusted to it by the state." (Emphases added). Likewise, the Mutual Aid and Emergency and Disaster Assistance and Agreement Act of

2004, at Tennessee Code Annotated section 58-8-102(8), defines a governmental entity, in relevant part, to mean "any political subdivision of the state, including, but not limited to, any incorporated city or town, metropolitan government, county . . . **or any instrumentality of government** created by one (1) or more of these named governmental entities . . . ." (Emphasis added). The Industrial Development Corporations Act, at Tennessee Code Annotated section 7-53-305 (a)(1), addresses a development corporation's exemption from taxation and states that "[t]he corporation is hereby declared to be performing a public function in behalf of the municipality with respect to which the corporation is organized and **to be a public instrumentality of such municipality**." (Emphasis added). Because the legislature specifically delineates a development corporation, such as SIDC, as an "instrumentality of [the] municipality," in determining whether SIDC is a governmental entity, we find guidance in the foregoing statutes. *Belle-Aire Village, Inc. v. Ghorley*, 574 S.W.2d at 725. As set out in context above, these statutes clearly state that instrumentalities of government, such as SIDC, are governmental entities. Reading the GTLA and other statutory definitions of governmental entity *in pari materia* with the exclusionary language contained in Tennessee Code Annotated section 20-12-119(c)(5)(A), i.e., "This subsection [mandating an award of attorney's fees on grants of motions to dismiss,] shall not apply to: (A) Actions by or against . . . governmental entities," we conclude that SIDC is, in fact, a governmental entity. Therefore, an award of attorney's fees in favor of SIDC is statutorily precluded. Accordingly, we reverse the trial court's award of attorney's fees in this case.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order granting SIDC's motion to dismiss Appellants' complaint. We reverse the trial court's award of attorney's fees in favor of SIDC. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Brandon Burke, Stephen Hood, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE