IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 1, 2024

HAMILTON COUNTY AND F/U/B OF THE STATE OF TENNESSEE ET AL. V.
TAX YEAR 2018 DELINQUENT TAXPAYERS ET AL.

**Appeal from the Chancery Court for Hamilton County**
No. 11244            Pamela A Fleenor, Chancellor

_____

**No. E2024-00581-COA-R3-CV**

_____

This appeal arises from an action to recover excess proceeds from the tax sale of a parcel of real property. After the redemption period had ended, the appellants, heirs to the decedent whose property was sold at the tax sale, moved to claim the excess proceeds pursuant to Tennessee Code Annotated § 67-5-2702. The appellee, a company that had held a valid judgment lien against the real property at the time of the tax sale, also moved to claim the excess proceeds, arguing that its lien held priority over the heirs' claim pursuant to § 67-5-2702(c)(2). The heirs objected, asserting that because the company had allowed its judgment lien to lapse after the tax sale, the company no longer maintained priority to claim the excess proceeds from that sale. The trial court granted the company's motion, determining that because its judgment lien had been valid and enforceable at the time of the tax sale, the company maintained priority over the heirs to receive the excess proceeds pursuant to § 67-5-2702(c)(2). Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY ARMSTRONG, JJ., joined.

Darren W. Kennedy, Chattanooga, Tennessee, for the appellants, Billie Friddell, Earl Greer, and Peggy Talley.

Charles D. Waller and Hannah M. Clyde, Knoxville, Tennessee, for the appellee, Ford Motor Credit Company, LLC.

## OPINION

### 1. Factual and Procedural Background

The determinative facts surrounding the underlying tax action are undisputed. In 1980, Wilma Greer and Louise Meroney acquired, by warranty deed, a fee simple interest in certain unimproved real property located on Bennett Road in Chattanooga, Tennessee ("the Property"). The deed was properly recorded in the register's office of Hamilton County, Tennessee. On February 10, 2003, Ford Motor Credit Company, LLC ("FMCC") obtained a default judgment against Ms. Greer in the amount of $7,606.58 and recorded the judgment in the register's office for Hamilton County on June 3, 2003, thus perfecting a judgment lien in favor of FMCC against any real property owned by Ms. Greer. *See* Tenn. Code Ann. § 25-5-101(b)(1) (West July 1, 2005, to current) ("[J]udgments and decrees . . . in excess of five hundred dollars ($500) obtained from and after July 1, 1969, in any court of general sessions of this state shall be liens upon the debtor's land from the time a certified copy of the judgment or decree shall be registered in the lien book in the register's office of the county where the land is located.").

Ms. Meroney died in 2012, leaving Ms. Greer as sole owner of the Property. FMCC timely sought and obtained an order from the trial court "reviving and extending" its judgment against Ms. Greer for an additional ten years—from February 11, 2013, to February 11, 2023. This was in accordance with Tennessee Rule of Civil Procedure 69.04, which governs the procedure for obtaining an extension of a previously awarded judgment and provides: "Within ten years from the entry of a judgment, the creditor whose judgment remains unsatisfied may file a motion to extend the judgment for another ten years." FMCC duly recorded the order reviving and extending its judgment on April 10, 2013, thus perfecting its extended judgment lien against the Property. *See* Tenn. Code Ann. § 25-5-101(b)(1). On November 14, 2017, Ms. Greer passed away, leaving the appellants, Billie J. Friddell, Earl Greer, and Peggy Talley ("the Heirs"), as heirs and devisees under her will.

In 2022, the Property was sold through a delinquent tax sale initiated by Hamilton County, and the order confirming the sale was entered by the trial court on July 1, 2022. In February 2023, FMCC's ten-year judgment lien against Ms. Greer expired because FMCC had not filed a motion to extend it a second time pursuant to Rule 69.04. In early 2024, the Heirs each filed a separate motion to claim the excess proceeds from the tax sale pursuant to Tennessee Code Annotated § 67-5-2702.[1] On January 25, 2024, FMCC in turn filed its motion to claim excess proceeds from the tax sale of the Property, claiming that (1) the judgment it had acquired against Ms. Greer in 2003 had never been satisfied; (2) interest had continued to accrue regarding the judgment over the years; and (3) as of July 1, 2022, the date of the order confirming the tax sale of the Property, the amount due by

---

[1] Billie Friddell's motion was filed on January 18, 2024, Earl Greer's motion was filed on January 22, 2024, and Peggy Talley's motion was filed on March 21, 2024.

reason of the then-valid judgment lien was $19,252.50.

The Heirs filed an objection to FMCC's motion, arguing that although FMCC had held a valid lien encumbering the Property at the time of the tax sale in July 2022, FMCC had lost its priority to claim any excess proceeds. They postulated that FMCC had allowed its judgment lien against the Property to lapse in February 2023, prior to the company's taking any action to collect on the judgment lien pursuant to § 67-5-2702.

After a hearing conducted on February 19, 2024, the trial court entered an order granting FMCC's motion to claim excess proceeds in the amount of $19,252.50. The court reasoned that the outcome of the case turned on the interpretation of and interplay between two relevant statutes: the statute governing distribution of excess proceeds from tax sales, § 67-5-2702, and the statute governing the period during which a judgment lien is valid, Tennessee Code Annotated § 25-5-105. The court determined that because both provisions applied to the instant action, the more specific statute governing tax sales should control.

The trial court then focused on § 67-5-2702(c), the portion of the statute delineating the order of priority in which valid claims for excess tax sale proceeds should be paid. The trial court concluded that FMCC, as a "lienholder holding a lien at the time of the tax sale," had established priority over the Heirs to receive disbursement of the excess sale proceeds. *See* Tenn. Code Ann. § 67-5-2702(c)(2). The trial court interpreted the plain meaning of the statutory phrase, "at the time of the tax sale," to mean that because FMCC had held a valid judgment lien in July 2022, when the order confirming the tax sale was entered, the company was entitled to excess proceeds from the sale even though its judgment lien had since expired. The Heirs timely appealed.

## II. Issue Presented

The Heirs present the following issue for review, which we have restated slightly:

Whether Tennessee Code Annotated § 67-5-2702 requires a judgment lien creditor seeking excess proceeds from a tax sale of real property to hold a valid, unexpired judgment lien at the time the creditor files its motion for excess proceeds, or whether it is sufficient for the creditor to maintain a valid lien at the time of the tax sale.

## III. Standard of Review

Our review focuses entirely on construing the meaning of statutes and applying them to undisputed facts. Thus, our review centers on questions of law, which we review *de novo* with no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When

conducting an analysis involving statutory interpretation, we adhere to the following longstanding principles:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

IV. FMCC's Claim to Excess Proceeds
Pursuant to Tennessee Code Annotated § 67-5-2702

As the trial court noted, the disposition of this case hinges on the interplay between two statutes: Tennessee Code Annotated § 25-5-105, which governs the time during which a judgment lien remains valid, and § 67-5-2702, which governs the procedure for claiming excess proceeds from a delinquent tax sale of real property. § 25-5-105 (West May 3, 2001, to current) provides in pertinent part:

(a)     Once a judgment lien is created by registration as provided in § 25-5-101(b), it will last for the time remaining in a ten-year period from the date of final judgment entry in the court clerk's office.

Tennessee Code Annotated § 67-5-2702 (West April 19, 2018, to current) provides in

pertinent part:

(a)     Following entry of the order of confirmation of sale, any interested person, as defined in this chapter, may file a motion with the court requesting disbursement of any excess sale proceeds pursuant to this section.

(b)     A copy of such motion shall be served, in the manner provided by the Tennessee Rules of Civil Procedure for motions not asserting new or additional claims for relief, on all interested persons as of the date of the filing of such motion, no later than thirty (30) days prior to the hearing date of the motion.

(c)     At the hearing, the court shall order that any remaining redemption period shall be terminated as to the movant and as to any other person entitled to redeem property who consents to such termination as evidenced by their signature on such order, and any excess proceeds be paid according to the following priorities to each party that establishes its claim to the proceeds:

        (1)     To the tax entity or entities prosecuting the delinquent tax sale, for any remaining or subsequent outstanding taxes that are a lien against the property;

        (2)     To any lienholder, private or public, holding a claim against the property at the time of the tax sale, for the amount proven to be due under such lien, in accordance with priorities established by applicable law;

        (3)     To any lienholder, private or public, holding a claim against the property arising after the tax sale, for the amount proven to be due under such lien, in accordance with priorities established by applicable law;

        (4)     To any taxpayer, according to such taxpayer's interest at the time of the tax sale; provided, that such taxpayer was a defendant in the underlying action, or acquired by will or intestate succession the interest in the property of a former taxpayer who was a defendant in the underlying action, and

        (5)     Any remaining excess proceeds shall be subject to the Uniform Unclaimed Property Act, compiled in title 66,

> chapter 29, part 1. A motion for excess proceeds may be filed in the court in which the proceeding is pending until such time as the funds are actually forwarded to the state pursuant to the Uniform Unclaimed Property Act. The presumption of abandonment shall not arise until the final determination of all filed motions for redemption and excess proceeds or one (1) year following the expiration of the redemption period for that parcel, whichever is later.

During the proceedings before the trial court, the Heirs moved to claim the excess proceeds from the tax sale of the Property pursuant to their rights as heirs and devisees under the will of Ms. Greer. *See* Tenn. Code Ann. § 67-5-2702(c)(4). In response, FMCC asserted that its judgment lien had priority over the Heirs to claim the excess proceeds because FMCC was a lienholder holding a claim against the property "at the time of the tax sale." *See* Tenn. Code Ann. § 67-5-2702(c)(2). As referenced above, the Heirs objected to FMCC's motion, arguing that although FMCC had indeed held a valid lien respecting the Property at the time of the tax sale, FMCC had permitted the lien to expire before filing the motion for excess proceeds. On appeal, the Heirs claim that because FMCC had allowed its judgment lien to lapse, FMCC lost its right to claim excess proceeds from sale of the Property because it was no longer able to establish a valid lien at the time it filed the motion to claim the excess proceeds pursuant to § 67-5-2702.

In support of their argument, the Heirs rely heavily on a judicial foreclosure case, *Andrews v. Fifth Third Bank*, 228 S.W.3d 102 (Tenn. Ct. App. 2007), asserting that *Andrews* is relevant to the instant action because "the process of a tax sale is almost, if not completely, identical to a judicial foreclosure of real property." In *Andrews*, the debtor's real property had been sold at a foreclosure sale, and both the debtor's ex-wife and a bank had held valid judgment liens against the property at the time it was sold. *Id.* at 104. Following the foreclosure sale, the ex-wife, Ms. Andrews, sued the bank, arguing that her claim maintained priority over the bank's claim because she had recorded her judgment lien first. *Id.* The trial court had determined that the bank held priority because Ms. Andrews had failed to "execute" on her judgment as required by Tennessee Rule of Civil Procedure 69.07(3). *See Andrews*, 228 S.W.3d at 104.

On appeal, the *Andrews* Court reversed the decision of the trial court, determining that because Ms. Andrews had recorded her judgment lien before the bank had received a final judgment relative to its lien, and because the ten-year life of Ms. Andrews's judgment lien had not yet expired, Ms. Andrews's lien was first in priority over the bank's, despite her failure to execute on the judgment. In so deciding, this Court explained:

> Tennessee Rule of Civil Procedure 69.07(2) states that:

A judgment lien against the judgment debtor's realty is created by registering a certified copy of the judgment in the register's office of the county where the realty is located. Once the judgment lien is created by registration, it will last for the time remaining in a ten-year period from the date of final judgment entry in the court clerk's office . . .

Thus, a judgment lien survives for ten years from the date of entry of final judgment and once the lien attaches, it may only be lost through a failure to exercise the right within the time provided by the statute. Tenn. R. Civ. P. 69.07(2); *ATS, Inc.* [*v. Kent*], 27 S.W.3d [923,] 926 [(Tenn. Ct. App. 1998)]. We therefore find that because Ms. Andrews perfected her judgment lien prior to FNB, and the ten-year period has not lapsed . . . her lien attached to the excess proceeds from the foreclosure sale and entitled her to payment in full before any payments were made to creditors of lesser priority.

*Id*. at 112-113.

In their appellate brief, the Heirs analogize and contrast Ms. Andrews's claim to the excess proceeds from the foreclosure sale of her ex-husband's real property, *see Andrews* at 106, to FMCC's motion to claim excess proceeds from the tax sale of the Property. The Heirs posit that unlike Ms. Andrews's judgment lien, which had not lapsed because it was still within the ten-year time limit proscribed by § 25-5-105, and which the *Andrews* Court determined "entitled her to payment in full before any payments were made to creditors of lesser priority," *see id*. at 113, FMCC's judgment lien <u>had</u> lapsed because its ten-year time limit had passed in February 2023. Thus, the Heirs argue, FMCC lost its "right to execute" against the Property by the time FMCC filed its motion to claim excess proceeds.

Although we recognize broad similarities between a foreclosure sale and a delinquent tax sale—both procedures involving the forced sale of property to satisfy a debt—we note significant differences between the situation in *Andrews* and the instant case. In the context of a delinquent tax sale of real property, such as the case at bar, the procedure for claiming excess proceeds from the tax sale is governed by a specific statute, § 67-5-2702. By contrast, *Andrews* mentions no corresponding specific statute governing the procedure for claiming excess proceeds from a foreclosure sale. Notably, the *Andrews* opinion does not analyze or even mention § 67-5-2702. Instead, the *Andrews* Court addressed the priority dispute between Ms. Andrews and the bank by focusing on the common law concept of "first in time, first in right." *See Andrews*, 228 S.W.3d at 106. The *Andrews* Court considered and analyzed this common law doctrine to resolve the narrow issue of whether a lien on real property must arise from a final judgment to ensure priority over other liens that had been perfected later in time. *See id.* at 106-107. *Andrews* did not address the relevant issue here: whether the expiration of a judgment lien which was active and enforceable at the time of a tax sale affects its efficacy in the context of

- 7 -

claiming excess proceeds pursuant to § 67-5-2702. Inasmuch as this case does not involve a foreclosure sale, we determine that *Andrews* is inapposite.

The Heirs further contend, relying on dicta from *Andrews*, that a creditor's right to enforce its judgment lien may be lost if the creditor's judgment lien lapses "prior to execution against the proceeds by the creditor." *See Andrews*, 228 S.W.3d at 112 (reiterating the bank's argument and the trial court's finding that Ms. Andrews's "failure to issue execution on her judgment lien denied her a place in the line which would render her judgment superior" to the bank) (internal punctuation marks omitted). The Heirs claim that FMCC, in allowing its judgment lien to lapse before seeking excess proceeds from the tax sale of the Property, failed to "execute" on its judgment lien in a timely manner and in so doing lost the right to enforce it. By proffering this contention, the Heirs apparently equate FMCC's motion to claim excess proceeds from the tax sale of the Property with an attempt to "execute" on its judgment. Upon review, we find no legal basis supporting this comparison.

Black's Law Dictionary defines "execution" as, *inter alia*, a "[j]udicial enforcement of a money judgment" or a "court order directing a sheriff or other officer to enforce a judgment" "[usually] by seizing and selling the judgment debtor's property." *Execution*, BLACK'S LAW DICTIONARY (12th ed. 2024). It is further defined as "a writ for the enforcement of a judgment," which "is directed to such officers as have authority to make service within the jurisdiction." *Id*. (quoting Gleason L. Archer, *Law Office and Court Procedure* 290 (1910)). A "writ of execution" is "an authorization to an executive officer, issued from a court in which a final judgment has been rendered, for the purpose of carrying such judgment into force and effect." *Id.* (quoting Benjamin J. Shipman, *Handbook of Common-Law Pleading* § 26, at 50 (Henry Winthrop Ballantine ed., 3d. ed. 1932)).. Tennessee Rule of Civil Procedure 69.07, which governs the general procedure for execution of judgment liens against realty in Tennessee, clarifies that "[t]he first judgment creditor to deliver a <u>writ of execution to the sheriff</u>, as shown by record in the clerk's office, has priority over other judgment creditors as to the realty levied upon." *See* Tenn. R. Civ. P. 69.07(3) (emphasis added). In the more specific context of an action to collect delinquent taxes, such as the underlying tax sale in the instant case, "an officer serving an execution issued in [a tax sale] proceeding . . . shall seize such cash, property, and other assets belonging to the [delinquent taxpayer], as is necessary to satisfy the execution[.]" *See* Tenn. Code Ann. § 67-5-2412(a).

Here, FMCC's motion to claim excess proceeds was not an execution on its judgment lien. The motion did not result in the issuance of a writ for enforcement of FMCC's judgment against the Property, nor did it result in an order from the trial court authorizing an executive officer to seize the Property or to make service on the debtor. By the time FMCC entered the proceedings, Hamilton County had already acquired a tax lien judgment against the Property and had executed upon that judgment by seizing the Property and selling it at a tax sale. Indeed, the procedure to collect excess proceeds from a tax sale

assumes that execution on a tax lien judgment has already occurred.  *See* Tenn. Code Ann. § 67-5-2702(a) (outlining the process for claiming excess proceeds "[f]ollowing entry of the order of confirmation of sale.").  In sum, our review of the plain meaning of the word, "execution," as well as its use and understanding in the procedural and statutory framework involving tax sales, leads us to the conclusion that FMCC's motion to claim excess proceeds pursuant to § 67-5-2702 was not an "execution" on a judgment as that term is defined and understood.  Accordingly, the Heirs' assertion that the trial court committed reversible error by failing "to consider the *Andrews* case as it applies to the expiration of judgment liens and the resulting loss of the right to execute against assets thereafter" is unavailing.

For proper analysis of the issue before us, we turn to the relationship between the two relevant statutes:  § 25-5-105, the statute governing the time frame during which a judgment lien remains valid, and § 67-5-2702, the statute governing distribution of excess proceeds after a tax sale.  In its final order, the trial court concluded that both statutes address the matter at hand, and we agree.  FMCC acquired its judgment lien against the Property via the former and subsequently moved for disbursement of excess proceeds from the tax sale of the Property via the latter.  When two statutes are relevant to an action, our Supreme Court has provided the following instruction:

> In construing [] two statutory provisions together, we follow the rule of statutory construction which provides that a special act will prevail over a more general one.  *See Arnwine v. Union County Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003) (quoting *Woodroof v. City of Nashville*, 183 Tenn. 483, 192 S.W.2d 1013, 1015 (1946)) ("Where the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the more particular provision."); *see also State v. Safley*, 172 Tenn. 385, 112 S.W.2d 831, 833 (1938).  When two statutes seemingly address the matter in question, and one is special and particular and the other is general, then the general statute will be construed so as to operate on all the subjects introduced therein except the particular one which is the subject of the special provision.

*State v. Davis*, 173 S.W.3d 411, 415 (Tenn. 2005).

Applying this guidance to the case at bar, we note that § 67-5-2702 delineates the procedure for interested persons to claim excess proceeds in the specific context of a delinquent tax sale, while § 25-5-105 provides generally the length of time that a judgment lien remains valid after it has been perfected by registration with the register of deeds.  As such, § 25-5-105 governs the length of a judgment lien in a variety of contexts, including,

*inter alia*, foreclosure proceedings and bankruptcy proceedings.[2] Accordingly, we determine § 25-5-105 to be more general in nature than § 67-5-2702. Therefore, to the extent that § 25-5-105 and § 67-5-2702 could be interpreted to conflict with one another, we determine that § 67-5-2702 controls.[3] *See Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023) ("When two statutes conflict, 'a more specific statutory provision takes precedence over a more general provision.'" (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013))).

To adjudicate FMCC's rights as a judgment lien creditor following the tax sale of the Property, we must look to the plain language of § 67-5-2702 within the context of the entire statute governing tax sales. *See Bidwell ex rel. Bidwell v. Strait*, 618 S.W.3d 309, 319 (Tenn. 2021) ("When a statute is unambiguous, we determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.") (internal punctuation marks and citations omitted). § 67-5-2702 states that "[f]ollowing entry of the order of confirmation of sale, any interested person, as defined in this chapter, may file a motion with the court requesting disbursement of any excess sale proceeds pursuant to this chapter." The chapter defines "interested person" as, *inter alia*, a "person . . . that holds a lien against a parcel or is the assignee of a holder of such a lien." Tenn. Code Ann. § 67-5-2502 (c)(1)(B). The parties agree that FMCC is an "interested person" pursuant to this definition.

Concerning the time limit for filing a motion to claim excess proceeds, § 67-5-2702 (c)(5) provides that "[a] motion for excess proceeds may be filed in the court in which the proceeding is pending until such time as the funds are actually forwarded to the state pursuant to the Uniform Unclaimed Property Act." The subsection goes further to provide that "[t]he presumption of abandonment shall not arise until the final determination of all filed motions for redemption and excess proceeds or one (1) year following the expiration of the redemption period for that parcel, whichever is later."[4] *See id.* The redemption period following a tax sale is one year from entry of the order confirming the sale. *See* Tenn. Code Ann. § 67-5-2701(a)(1)(A) ("The right to redeem shall be exercised within the time period established by this subsection (a) beginning on the date of the entry of the order

---

[2] *See, e.g.*, *Andrews*, 228 S.W.3d at 102 (foreclosure proceeding involving § 25-5-105); *Weaver v. Hamrick*, 907 S.W.2d 385 (Tenn. 1995) (bankruptcy proceeding involving the tolling of § 25-5-105).

[3] We note that the parties appear to agree that the two statutes do not actually conflict with one another. The Heirs assert that the statutes exist "in complete harmony when interpreted correctly," and FMCC posits that there is no conflict between the statutes because they "cover two different things." Neither brief contains a potential conflict between the statutes in its statement of the issues.

[4] Certain provisions of the Uniform Unclaimed Property Act, codified at Tennessee Code Annotated §§ 66-29-101, *et seq.*, specify the durations of time after which a presumption of abandonment attaches to various types of property and how a property owner can overcome the presumption by showing an apparent ownership interest. *See, e.g.*, Tenn. Code Ann. §§ 66-29-105, -113.

confirming the sale, but in no event shall the right to redeem be exercised more than one (1) year from that date."). Thus, a party seeking disbursement of excess proceeds from a tax sale must do so within two years of the date that the order confirming the sale is filed or before the final determination of all filed motions for redemption and excess proceeds, whichever is later. Here, the redemption period for the Property ended on July 1, 2023, one year following entry of the order confirming the tax sale. *See* Tenn. Code Ann. § 67-5-2702(a)(1)(A). Thus, FMCC had until at least July 1, 2024, to file its motion to claim excess proceeds. *See* Tenn. Code Ann. § 67-5-2702(c)(5). FMCC moved to claim excess proceeds from the sale of the Property in January 2024, well within this statutory time frame.

After delineating the process and time limits for filing a motion to claim excess proceeds, the statute then lists the order of priority for receiving disbursement of the proceeds. *See* Tenn. Code Ann. § 67-5-2702(c)(1)-(5). According to this statutory priority, FMCC's judgment lien would place second in priority, after the taxing authority, pursuant to § 67-5-2702(c)(2) (providing that excess proceeds be paid, after the taxing entity, "[t]o any lienholder, private or public, holding a claim against the property at the time of the tax sale, for the amount proven to be due under such lien, in accordance with priorities established by applicable law[.]"). The Heirs, in turn, would receive proceeds after any judgment creditors, pursuant to subsection (c)(4), as taxpayers who "acquired by will or intestate succession the interest in the property" from Ms. Greer. The Heirs do not disagree that according to this statutory priority scheme, FMCC's judgment lien would normally enjoy priority over their claim. However, they contend that FMCC's claim lost its priority relative to theirs when FMCC allowed its judgment lien to lapse after the tax sale such that FMCC could not "establish its claim to the proceeds" at the time of the motions hearing.

Upon review, we find nothing in the plain language of the statute to support the contention that FMCC was required to establish that its lien was active and valid at the time it filed the motion for disbursement of excess proceeds, as the Heirs suggest. Instead, the language supports the opposite conclusion. § 67-5-2702(c)(2) clearly grants second priority to lienholders "holding a claim against the property <u>at the time of the tax sale</u>" (emphasis added). The sentence construction of the subsection indicates that the clause, "at the time of the tax sale," serves as the modifier for the lienholder's "claim against the property." This interpretation is bolstered by the language of the next subsection, (c)(3), which affords third priority to any lienholder "holding a claim against the property <u>arising after the tax sale</u>" (emphasis added). Like the clause, "at the time of the tax sale," in subsection (c)(2), the clause, "arising after the tax sale," in subsection (c)(3) also modifies a lienholder's "claim against the property." The legislature thus recognizes two distinct lienholders, junior to the taxing entity, maintaining different priority: one lienholder, with relative superior priority, holding a claim against the property at the time of the tax sale and another lienholder, with relative junior priority, holding a claim against the property arising after the tax sale. Significantly, the statute is silent regarding whether or how claims against property can be lost through failure to renew a judgment lien.

- 11 -

We interpret the plain language of the statute to mean that a lienholder who can "establish[] its claim to the proceeds" by showing that it had a "claim against the property" "at the time of the tax sale" enjoys second priority—after the taxing entity—to claim disbursement of excess proceeds pursuant to § 67-5-2702(c)(2). As stated above, the parties agree, and the record demonstrates, that FMCC held a valid claim against the Property <u>at the time of the tax sale</u> in July 2022. According to our interpretation of the plain meaning of the statute, *see In re Estate of Tanner*, 295 S.W.3d at 613-14, FMCC's claim for disbursement was of higher priority than that of the Heirs.

The statute governing excess proceeds provides yet another indicator that FMCC maintained priority over the Heirs to collect excess proceeds from the Property based upon its valid judgment lien at the time of the tax sale. § 67-5-2702(c)(2) not only contemplates distribution of excess tax sale proceeds to "any lienholder . . . holding a claim against the property at the time of the tax sale," but it further modifies "claim against the property" as a claim that is "in accordance with priorities established by applicable law." The legislature deemed this phrase sufficiently important to expressly define it as follows:

> For the purposes of this section, "in accordance with priorities established by applicable law" means that the priority of the interests in the parcel shall transfer to the proceeds from the sale of the parcel.

Tenn. Code Ann. § 67-5-2702(f) (West April 19, 2018, to current). We interpret this express definition to mean that judgment liens that have attached to a parcel of land transfer, with their priority intact, to funds realized from the tax sale of that parcel. We therefore conclude that FMCC's judgment lien, which was valid and enforceable at the time of the tax sale of the Property, transferred at the time of the tax sale to the proceeds from that sale <u>with its priority over the Heirs' claim intact</u>. This conclusion is consistent with our interpretation above concerning the plain meaning of § 67-5-2702(c)(2).

Upon review of the plain language of § 67-5-2702 concerning disposition of excess proceeds from a tax sale of real property, we conclude that FMCC's valid claim against the Property at the time of the tax sale, including the rights and priority associated with it, transferred to the funds generated from that sale. Thus, according to the plain statutory language, we find that FMCC maintained priority to receive disbursement of excess proceeds from the tax sale of the Property because it held a valid judgment lien against the Property at the time of entry of the order confirming the tax sale in July 2022.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's decision to grant FMCC's motion to claim excess proceeds from the tax sale of the Property pursuant to Tennessee Code Annotated § 67-5-2702. This case is remanded to the trial court for enforcement of

the judgment and collection of costs below.  Costs on appeal are assessed to the appellants, Billie Friddell, Earl Greer, and Peggy Talley.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE